NEW-YORK,
May, 1809.

Hall
v.
Shultz.

case within that of *Mapes* v. *Sidney.* (*Cro. Jac.* 683.) The court are of opinion, that the motion must be denied.

Motion denied.

— ——◆ ❖ ◆—— —

S. HALL *against* SHULTZ and SHULTZ.

*Where A. a-*
*greed to buy in*
*the land of B.*
*which was to be*
*sold on execu-*
*tion, and recon-*
*vey it to him, on*
*payment of the*
*money advan-*
*ced, and a rea-*
*sonable    com-*
*pensation for his*
*trouble ; and A.*
*having  bought*
*the land,refused*
*to reconvey it to*
*B.  unless  he*
*paid 300 dollars,*
*in  addition  to*
*the    principal*
*and interest  of*
*the sum advan-*
*ced by A. and*
*B. in order to*
*obtain  his land,*
*paid the 300 dol-*
*lars ; it was held*
*that  B.  could*
*not recover the*
*money back, so*
*paid,in an action*
*for  money had*
*and received to*
*his use.*

THIS was an action of *assumpsit* for money had and received to the use of the plaintiff.

The following facts appeared from the evidence at the trial.   The farm of the plaintiff was about to be sold by the sheriff, on an execution issued out of this court ; and one *William Swart* agreed with the plaintiff to bid off the farm and advance the purchase-money, and to reconvey the farm to the plaintiff on payment of the money so advanced on the sheriff's sale. One *Yeomans,* who was a witness in the cause, was employed by *Swart,* who was going from home, to transact the business for him, and was told by *Swart,* that if the defendants came to bid off the farm, he might permit them to do it, as it was the same thing as if he (*Swart*) should do it. On the day of sale, one of the defendants, *Jacob Shultz,* was present, and told the witness, that he had come over for the purpose of bidding off the farm for the plaintiff ; that he had the money to pay for it, and if he should bid it off, he would convey it to the plaintiff, on being repaid the consideration money.

A son of the plaintiff, in behalf of his father, agreed with *Jacob Shultz,* that he should bid off the farm for the amount of the execution, and if the plaintiff repaid the money with interest, in four months, the farm should be reconveyed to the plaintiff, and *Shultz* said that he would not charge the plaintiff more than the interest, beyond the amount advanced,

unless the plaintiff should think proper to allow him some-
thing for his trouble; and the witness answered, that he
did not doubt that his father would make *Shultz* a reason-
able compensation for his trouble. Another witness who
was present, stated the agreement to be, that *Shultz* was to
bid off the farm, and reconvey it, at any time, within 12
months, on the repayment of the purchase-money with the
interest, and a reasonable compensation for his trouble.

After the defendants had bid off the farm, the plaintiff
called on them for the purpose of having the agreement re-
duced to writing, when the defendants refused to recon-
vey the farm to the plaintiff, unless he would pay them the
consideration money and interest, and the further sum of
300 dollars, for their trouble and expense in attending to the
business. A written agreement was then made by the de-
fendants, as follows: " We, the subscribers, do hereby cer-
tify, that we will let *Samuel Hall* have the farm again he
now lives on, by paying us the same which we paid the
sheriff for in *Ulster* county, with the interest from the date,
and 300 dollars for our expenses and trouble, which must be
paid on or before the first day of *April* next; if not paid
then, shall be void, and of no effect. As witness our
hands, this 30th day of *December*, 1805." Signed " *John
F. Shultz.*" The plaintiff reminded the defendants of their
former agreement to wait four months, and the agreement
was altered from two to three months. The plaintiff ob-
jected to the payment of the 300 dollars, observing that it
was a very large sum for so short a time, but he knew that
he must pay whatever the defendants demanded; upon
which, one of the defendants replied, that he had been
obliged to ride three or four days to obtain the money, as
he had it not on hand, and that the farm was worth 8,000
dollars.

On being told by one of the witnesses that the 300 dol-
lars was a pretty large sum, one of the defendants said,
that they had a great deal of trouble in raising the money, and
that he had been obliged to ride day and night to obtain it.

The witness observed, that he thought any person would take a great deal of trouble for so large a sum, upon which the defendants replied " yes, if one could have such opportunities often enough."

The plaintiff paid the sum advanced by the defendants, with interest, and also the 300 dollars; to recover back the last sum the present suit was brought.

The judge, before whom the cause was tried, ordered the plaintiff to be called and nonsuited, with leave to move the court to set aside the nonsuit, and for a new trial.

*Ruggles* and *Hawkins*, for the plaintiff, contended, that the payment of the 300 dollars must be considered as compulsory. In the case of *Astley* v. *Reynolds*,[*] where plate had been pawned for 20 pounds, and the pawnee refused to return it, without being paid 10 pounds for the interest, which the pawnee paid, he was allowed to recover back the excess, on the ground of its being extorted, by taking an advantage of the necessity of the plaintiff. Lord *Mansfield*, in the case of *Smith* v. *Bromley*,[†] said, that if a man makes use of what is in his power to extort money from one in distress, it was illegal and oppressive, and that an action would lie to recover back what the party had been so unjustly compelled to pay. The principle of this decision has been repeatedly recognised and sanctioned by the *English* courts.

*Sudam.* The parties must be confined to the written agreement, and by that the plaintiff could have compelled the defendants to have reconveyed the land on the payment of the principal sum with interest, and a reasonable compensation for their trouble, so that the plaintiff was under no necessity to pay the 300 dollars, unless he was willing to do so. This case differs from that of *Astley* v. *Reynolds*, where the party could not, by an action of trover, get back the plate he had pawned. The payment of the 300 dollars must, therefore, be considered as voluntary on the part of the

* 2 *Str.* 916.

† *Doug.* 696. in note.

plaintiff, and he ought not now, after the lapse of three years, to be allowed to recover it back. Where a party pays money with a full knowledge of all the facts, and of his legal rights, he can never recover it back.*

* 2 *East*, 469.
471. a. 2 *Comyn*
*on Cont.* 40, 41.
1 *Esp.*   *Cases*
*N. P.* 84.

SPENCER, J. The plaintiff has brought this action for money had and received, to recover back 300 dollars voluntarily paid by him, under the following circumstances. The plaintiff's farm was about to be sold on execution, and the defendants, at his instance, came forward and bid it off, under a parol agreement as stated by one of the witnesses, to reconvey it to the plaintiff, on being repaid the money advanced, and by another witness, to reconvey, if the plaintiff paid the amount advanced, with legal interest, in four months, unless the plaintiff should think fit to allow them something for their trouble. By another witness it was stated, that the defendants were to reconvey the farm at any time, within a twelvemonth, on the repayment of the purchase-money with the legal interest, and a reasonable compensation for their trouble. Soon after the purchase of the farm by the defendants, at public auction, the plaintiff applied to them to reduce the agreement to writing : this they did, and by the writing which they gave to the plaintiff, they agreed to convey to him the farm, on being refunded the money advanced with interest, and 300 dollars for their expenses and trouble, in about two months from the time of the sale. On receiving this written proposition, the plaintiff observed to the defendants, that 300 dollars was a very large sum for so short a time, but he knew he was obliged to pay whatever they demanded. The plaintiff also observed, that the defendants had agreed to give him four months to redeem, on which, one of the defendants stated he had been obliged to ride three or four days for the money, not having it on hand, and the agreement was altered by extending the time one month longer. The plaintiff, within the time specified, paid the defendants the amount advanced by them, the interest, and 300 dollars for their trouble. The farm was

worth 8,000 dollars, and had been bid off at more than 8,000 dollars.

On this proof, the judge directed a nonsuit, which the plaintiff has moved to set aside, for misdirection.

The defendants having, with their own money, purchased the plaintiff's farm, on an execution, under a parol agreement, I strongly doubt, whether there existed any remedy for him at law or in equity, to enforce this agreement, or to recover damages for its non-performance. It related to lands, and comes within the 11th section of the statute for the prevention of frauds, which declares that no action shall be brought whereby to charge any person upon any contract or sale of lands, or any interest in or concerning them ; unless the agreement, or some note thereof, be in writing. The wisdom of this statutory provision is rendered manifest by the facts in this case : the witnesses who speak of the contract, all differ from each other as to its terms. Viewing, as I do, the defendants under no legal obligation to reconvey the property they had purchased, when the plaintiff afterwards treated with them for the re-acquisition of the farm, he treated as a purchaser, and they had a right to exact such terms as they saw fit. It is in vain to urge the moral obligation which the defendants were under from their parol agreement, or the hardship of the particular case ; courts of law cannot enforce moral duties, or relieve particular hardships, without a legal basis. If parties are inattentive to their own interests, from too great confidence, or from ignorance, they must frequently be remediless.

The present case has been compared to a set of cases, where money has been unjustly extorted, and a remedy has been afforded, by an action for money had and received, to recover it back. The case of *Astley* v. *Reynolds*[*] has been cited. Plate was pawned to raise 20 pounds. At the end of three years the pawner came to redeem, and offered to pay the money, and 4 pounds, which was more than the legal interest ; the pawnee demanded 10 pounds. There was a second tender of the 4 pounds ; it was refused, and the 10 pounds insisted on. The plaintiff paid it, and got his

goods, and brought his action to recover the surplus beyond the legal interest; and he recovered, on the principle that it was a payment by compulsion, and that he must have had such an immediate want of his goods, that an action of trover would not do his business. The principle of this case has been subsequently overruled by Lord *Kenyon*, in the case of *Knibbs* v. *Hall*.* There a landlord had exacted 5 guineas more than the real rent of chambers, which demand the tenant resisted, insisting that the rent was 20 and not 25 guineas, and to avoid a distress which was threatened, paid at the rate of 25 guineas. His lordship held this was not a payment by compulsion, as the tenant might, by a replevin, have defended himself against the distress; and, therefore, after a voluntary payment so made, he should not be allowed to dispute its legality. Without undertaking to pronounce between the cases cited, the present differs materially from both; here there was no legal right to demand a conveyance of the property; there was no title to it on the part of the plaintiff; besides, there was no standard whereby to ascertain the allowance which ought to have been made to the defendants for their trouble. In the case from *Strange*, the standard was the legal interest, and in the case decided by Lord *Kenyon*, the sum exacted beyond the rent stipulated, was a fact depending on proof, and would have been the amount which the defendant had a right to claim. The case of *Smith* v. *Bromley*,† has also been relied on; in that case, money had been advanced by a relation of the bankrupt, to induce a creditor who refused, without such advance, to sign a certificate. An action was brought to recover it back, and though Lord *Mansfield* was at first against the action, he afterwards, with the other judges, sustained it, as coming within the letter and reason of the statute which prohibited such inducements being taken. On the ground that there existed no legal right on the part of the plaintiff, to demand or enforce a conveyance, that he must be considered in the light of any other purchaser, and that the defendants might make their own terms, and that the plaintiff has voluntarily,

* 1 *Esp.* 84.

† *Doug.* 696. in note.

and with his eyes open, fixed the compensation claimed by the defendants, and paid them the money, he can have no claim to call on the court to aid him in getting rid of what he conceives an unconscientious advantage. But, if there did exist a legal remedy to enforce a reconveyance, as the measure of the defendant's claim to compensation rested in arbitrary discretion, the plaintiff, by voluntarily acceding to the terms proposed by the defendants, has lost any right to call on a jury to relieve him from an allowance deliberately fixed by himself.

The nonsuit, in my opinion, was properly directed.

THOMPSON, J. The application, in this case, is to set aside the nonsuit ordered at the trial. The action was for money had and received, and is attempted to be maintained on the ground that the defendants had by imposition, oppression, and taking an undue advantage of the plaintiff's situation, extorted from him a sum of money, which he has sought by this action to recover back. That these allegations, if made out in proof, afford a good cause of action, cannot be denied. A brief statement of the leading facts in the case becomes necessary, to see whether the transaction is stamped with the character attributed to it. The plaintiff's farm being about to be sold under an execution, which he could not immediately discharge, he, by his agent, agreed with *Jacob Shultz*, to bid off the farm, he, *Shultz*, promising to reconvey it to the plaintiff, on being within a certain time reimbursed for his advances, with the interest, and a reasonable compensation for his trouble. On the day of sale, *Shultz* attended, and declared to one of the witnesses that he came to bid off the farm for *Hall*, and would reconvey it to him on being repaid. The farm was accordingly bid off by him. A few days after the sale, the plaintiff called on the defendants to have the agreement reduced to writing. The defendants refused to reconvey, unless the plaintiff would pay them the sum they had paid to the sheriff, with the interest, and 300 dollars for their trouble. The plaintiff

told them, 300 dollars was a large sum for their trouble, but observed, he knew he was obliged to pay whatever they demanded; upon which, one of the defendants said, he had been obliged to ride *three or four days* for the money. The plaintiff has paid the amount of the sum demanded; and the question presented is, whether these were not circumstances proper to be submitted to the jury, and for them to determine whether the 300 dollars, or some part of it, was not unjustly extorted from the plaintiff. According to my view of the case, it ought not only to have been submitted to the jury, but is so strongly marked with dishonesty and oppression, that they ought not to have hesitated about the result. Courts and juries ought to discountenance impositions of this kind, which are founded in fraud and immorality. The defendants seek to shelter themselves under the rule, *volenti non fit injuria;* but, in my judgment, it would be a misapplication of the rule to extend it to a case like the present. Could the payment of the 300 dollars be said to be voluntary? The plaintiff had, it is true, imprudently confided in the defendants, and thereby placed himself in their power; at least this was his impression, if we may judge from the declaration made by him at the time. The agreement made previous to the sale, was calculated to lull the plaintiff to sleep. It was in evidence that the farm was worth 8,000 dollars; the precise sum paid by the defendants is not stated, but it is fairly to be inferred that it was much short of the value of the farm, and, of course, it was an object of importance with the plaintiff to obtain a reconveyance.

I cannot discover in any part of the case a single circumstance, shewing this to have been, in legal acceptation, a voluntary payment of the 300 dollars by the plaintiff, or an assent to its being a reasonable compensation for the defendants' trouble. The instrument in writing set forth, was no agreement between the parties, but merely propositions of the defendants with which the plaintiff might comply, or lose his farm. The objection made by the plaintiff to the time of payment, related to the reimbursement of the advances to

the sheriff, in satisfaction of the execution. The agreement entered into before the sale, was to repay the money within *four* months ; but after the sale, and when the defendants had the plaintiff in their power, they demanded payment in *two* months, and would not extend the time beyond *three.* This was a strong indication of a disposition so to embarrass the plaintiff, as to make it impracticable for him to redeem his farm, especially, when it is connected with the circumstance mentioned by one of the witnesses, that *Shultz* was *anxious* to bid off the farm, intending probably to make a speculation out of it. If the agreement to reconvey the farm was absolutely void, so that the plaintiff was without remedy, it would, in my opinion, strengthen his claim to recover back the money unjustly extorted. Had the defendants purchased the farm at auction, without having made any previous agreement to reconvey, the case would have been very different. It was in the plaintiff's power to have procured some other friend to purchase in the farm for him, had he not reposed confidence in the defendants ; for it appears that Mr. *Swart* had actually engaged a person to do it, in case the defendants should not attend the sale. *Shultz,* in making the purchase, evidently considered himself as acting for the plaintiff, for he expressly declared that he came for the purpose of bidding off the farm *for Hall,* and the true question between the parties appears to me to be, what compensation the defendants are entitled to for their services. Had the jury passed upon this question, and determined that 300 dollars was no more than a reasonable compensation, it would not, perhaps, be proper to disturb the verdict, although it might be thought an extravagant allowance for *three* or *four* days service, this being all the trouble the defendants pretended they had taken about the business, until after the suit was commenced against them, when they attempted to magnify their claim by setting up a pretence that they had had to ride night and day to get the money ; but they even then acknowledged that 300 dollars would be a large sum for their trouble, *if they could have such oppor-*

*tunities often enough.* It is to be hoped, however, their *opportunities* will not be very frequent, for it is a business not deserving of much encouragement.

A recurrence to two or three adjudged cases will show to what length the remedy here sought has been carried. In the case of *Astley* v. *Reynolds*, (2 *Stra.* 915.) the plaintiff having pawned some plate to the defendant for 20 pounds, at the end of three years came to redeem it ; the defendant demanded 10 pounds as the interest ; the plaintiff tendered him 4 pounds, knowing that to be more than the legal interest ; but the defendant refusing to accept it, the plaintiff, on a second application and refusal, paid the 10 pounds, and then brought his action to recover back the surplus beyond the legal interest. Upon which the court said this was a payment by compulsion. " The plaintiff might have such an immediate want of his plate, that an action of trover would not answer. Where the rule *volenti non fit injuria* is applied, it must be where the party had his freedom of exercising his will, which this man had not. We must take it he paid the money, relying on his legal remedy to get it back again."

So in the case of *Smith* v. *Bromley*, (*Doug.* 696. *note.*) Lord *Mansfield* said, if a man makes use of what is in his own power, to extort money from one in distress, it is illegal and oppressive ; and it being iniquitous and illegal thus to take money, therefore it was so to detain it. Mr. *Evans*, in his valuable appendix to *Pothier*, (2 *Poth.* 378.) observes, that there is no subject in its nature more wholly referable to the general rules of natural justice, than that of reclaiming money unduly paid. In the leading case on this subject of *Moses* v. *Macferlan*, (2 *Burr.* 1012.) Lord *Mansfield*, in giving an exposition of the grounds and nature of the action for money had and received, states several principles, which have ever since been looked upon as the standard of authority, even by those who think that in their application to that case, he

NEW-YORK,
May, 1809.

Hall
v.
Shultz.

did not allow sufficient consequence to other principles, by which they ought properly to have been restricted and controlled. He there observes, that this kind of equitable action to recover money which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It is only for money which, *ex æquo et bono*, the defendant ought to refund. It lies for money got by imposition express or implied, or by extortion or oppression, or an undue advantage taken of the plaintiff's situation. In one word, the gist of this action is, that the defendant, upon the circumstances of the case, is obliged, by the ties of natural justice and equity, to refund the money. These principles are derived from the juridical wisdom of the civil law, and are founded on the immutable rules of justice and moral honesty ; and, in my opinion, apply with full force to the case before us.

I am, accordingly, of opinion, that the nonsuit ought to be set aside, and a new trial awarded.

KENT, Ch. J. VAN NESS, J. and YATES, J. concurred in the opinion delivered by SPENCER, J.

Rule refused.