## BEEBE *vs.* JOHNSON.

If a party covenant to do an act, he is bound to perform what he undertook to do, or pay damages; the difficulty or improbability of accomplishing the undertaking will not excuse him. Nothing short of showing that the thing to be done cannot by any means be accomplished will relieve him from his obligation. It was accordingly held in this case, where the defendant had covenanted that he would perfect in England a patent right granted in this country so as to ensure to the plaintiff the exclusive right of vending the article patented in the provinces of Upper and Lower Canada, that he was not excused from performance, although it appeared that the power of granting exclusive privileges of this kind appertained not to the mother country, but to the provinces, and were never granted except to subjects of Great Britain and residents of the provinces, and could not be granted to either the plaintiff or the defendant, as both were citizens of this country.

An American citizen, it seems, may obtain a foreign domicil, which will impress upon him a national character for commercial purposes.

THIS was an action of *covenant*, tried at the Jefferson circuit in December, 1835, before the Hon. HIRAM DENIO, then one of the circuit judges.

On the 21st January, 1833, Johnson, for the consideration of $5000, conveyed by deed to Beebe the *sole* and *exclusive right* to make, use, and vend in Upper and Lower Canada, in certain counties of this state, and in other places, a *threshing machine* which had been patented to one Warren, and *covenanted to perfect the patent right in England as soon as practicable and within a reasonable space of time*, so as to secure to Beebe the entire control of the provinces of Upper and Lower Canada. In April, 1834, Beebe commenced this suit, and in his declaration, after setting forth the contract, averred, that although a reasonable time for the purpose had long since elapsed, that Johnson had not perfected the patent right in England, or otherwise secured to him the sole and exclusive right of making, using and vending the machine in the provinces of Upper and Lower Canada. He further averred, that Johnson and himself being citizens of the United States, Johnson could not obtain, either for himself or for Beebe the plaintiff, from the proper authorities in Canada, the exclusive right of vending the

machine within those provinces; and so he said, Johnson had not kept his covenant. The defendant pleaded the general issue, and gave notice of special matter to be proved on the trial. On the trial of the cause the plaintiff read in evidence a letter of the defendant, dated 8th April, 1833, in which he admitted, in substance, that in the negotiation between the parties the exclusive right of vending the machine in the Canadas had been estimated at $500. The plaintiff also proved by a witness, who had been employed in the Canadas by him in vending the article, that the exclusive right of vending it there, would in his opinion be worth $500. By a written stipulation between the parties it was admitted that the patent right could not be prefected in England, because the authority to grant letters patent for such improvements was vested in the provinces, and that in the provinces the exclusive right of vending improvements of this nature can be conferred only upon a *subject of Great Britain* and a *resident of the provinces ;* and that the *patentee,* the *plaintiff* and the *defendant*. are all citizens of the United States, and cannot become subjects of Great Britain short of a residence in the provinces of seven years. The jury found a verdict for the plaintiff of $601,23, being the sum of $500 with the interest thereof from the date of the deed declared upon. The defendant's counsel having moved for a *nonsuit* which was overruled, and having excepted to the charge of the judge, now moved for a new trial. The principal grounds relied upon in support of the application will appear from the opinion delivered refusing a new trial.

*W. C. Noyes,* for the defendant.

*J. A. Spencer,* for the plaintiff.·

*By the Court,* NELSON, Ch. J. It is supposed by the counsel for the defendant that a legal impossibility prevented the fulfilment of the covenant to perfect the patent right in England, so as to secure the monopoly of the Canadas to the plaintiff, and hence that the obligation was dispensed with, so that no action can be main-

tained.   There are authorities which go that length, Co.
Litt. 206, b. ; Shep. Touch. 164 ; 2 Co. Litt. 26 : Platt
on Cov. 569 ; but if the covenant be within the range of
possibility, however absurd or improbable the idea of the
execution of it may be, it will be upheld : as where one
covenants it shall rain to-morrow, or that the Pope shall be
at Westminster on a certain day.   To bring the case with-
in the rule of dispensation, it must appear *that the thing to
be done cannot by any means be accomplished ;* for, if it is
only improbable, or out of the power of the obligor, it is not
in law deemed impossible.   3 Comyn's Dig. 93.   1 Roll.
Abr. 419.   Now it is clear that the fulfilment in this case
cannot be considered an impossibility within the above
exposition of the rule ; because, for any thing we know to the
contrary, the exclusive right to make, use and vend the
machine in the Canadas, might have been secured in Eng-
land by act of parliament or otherwise ; at least, there is
nothing in all this necessarily impossible.   These provinces
are a part of the British Empire, and subject to the power
of the parliament at home ; which body might very well
grant the privilege the defendant covenanted to procure.
Certainly we are unable to say the government cannot or
would not *by any means* grant it.   There is, then, nothing
in the case to take it out of the rule in *Paradine* v. *Jane,*
Aleyn, 27, as expounded by Chambre, J. in *Beall* v *Thomp-
son,* 3 Bos. & Pull. 420, namely, if a party enter into an
absolute contract without any qualification or exception,
and receives from the party with whom he contracts the
consideration of such engagement, he must abide by the
contract, and either do the act or pay damages ; his lia-
bility arising from his own direct and positive undertaking.
6 T. R. 750.   8 id. 267, Lawrence, J.   10 East, 533.   4
Carr. & Payne, 295.   1 Selw. 344.

It has also been said, that the action cannot be main-
tained, as the covenant contemplated the violation of the
laws of England.   We are unable to perceive the force of
this objection, as the fulfilment of the covenant necessarily
required the procurement of lawful authority to make and
vend the machine in the Canadas.   It is difficult to under

stand how this could be accomplished by other than lawful means. That it might be by such, we have already considered not impossible.

Again ; it was said the contract was void, because it contemplated a renunciation of citizenship by the defendant. Whether, if the fact was admitted, the consequence would follow we need not stop to consider, because it is very clear that no such step is necessarily embraced in the covenant. For aught we know, the patent might be procured without such renunciation; and if it were considered unlawful to contract for expatriation, in as much as this agreement does not necessarily contemplate it, we would be bound to hold that the defendant assumed to procure the patent without it. But even in England, the common law rule against the expatriation of the subject is so far modified that naturalization abroad for commercial purposes is recognized, and is of course lawful. 1 Comyn, 677. 8 T. R. 31. 1 Bos. & Pul. 430, 440, 444. 2 Kent's Comm. 49. 1 Peter's C. C. R. 159. In the case of *Wilson* v. *Marryat,* 8 T. R. 31, and 1 Bos. & Pull. 430, it was decided that Collet, a natural born subject of Great Britain, having become a citizen of the United States, according to our laws, was entitled to all the advantages of an American citizen under the treaty of 1794. There the defendant undertook to avoid a policy of insurance procured by the plaintiff for the benefit of Collet upon an American ship and cargo, of which he was master, on the ground that he was a British subject, and therefore the trade in which he was engaged illegal ; being in violation of the privileges of the East India Company, which trade was secured to American citizens by the treaty of 1794.

New trial denied.