The defendants' second plea is bad on demurrer. In the action of covenant, an excuse for the non-performance must be specially pleaded, and the nature of the excuse must be specially shown, as in an action for rent that the defendant was evicted, or that the plaintiff omitted to perform a condition precedent. (1 Chitty,
429, ed. of 1828; 487 of ed. of 1851, and see the precedentsin Covenant in vol. 3.) The defendants' second plea in this case does not apprise the plaintiff of the nature of the defence, by stating what wrong or default had been done or committed by the plaintiff to defeat his action. There is no precedent for such a plea in an action of covenant, and it is repugnant to the general principles of pleading, by which a defendant is bound to set forth his defence in such manner that the plaintiff may know how to meet it. We are referred to a precedent of a similar plea to be found in 3d Chitty, page 985 (ed. of 1828). But that was a plea in an action of debt upon a bond of indemnity, and I am unable to perceive how it can be reconciled in that action with the general rules of pleading, unless it was in a case in which the acts against which the indemnity was provided were in themselves illegal and tortious, and the indemnity therefore void in law. The plea in the present case cannot be supported upon any analogy to the cases in which the plaintiff may reply, deinjuria absque tali causa, to a defendant's plea in excuse of the act complained of. I think the court below was right in the judgment on the demurrer.
The question between these parties upon the merits of the case, as disclosed by the referee's special report, depends on the defendants' liability upon the covenant, and not upon the law applicable to the duty of a common carrier. The defendants covenanted to transport the goods from the city of New-York to Independence in the State of Missouri. But they were not bound to carry them there by any particular route or mode of conveyance. It appears from the contract that the parties expected the goods to be carried by way *Page 115 
of Pittsburgh, but there was no covenant on either side that they should go by that route; and if they had been sent by way of New Orleans, and had arrived in season, it would have been a good performance of the defendants' covenant.
The delay in repairing the Pennsylvania canal does not excuse the defendants for not delivering the goods in time. The covenant was to deliver the goods within 26 days from the first of April. No provision was made by which they were to be discharged from the obligation upon any contingency whatever. It is a well settled rule of law, that where a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility in certain events; and in such a case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the control of the party. (Chitty onContracts, 734, and cases cited, ed. 1842; see Hadley v.Clark, 8 T.R., 259; Beebe v. Johnson, 19 Wend., 500; 4Wheaton, 214; 6 T.R., 750; Angell on Carriers, § 294, andcases cited.)
If the absolute impossibility of delivering the goods at Independence within the time specified would have excused the defendants, it was incumbent on them to show it. This they have not done. For aught that appears in the case, the goods might have been forwarded in time by way of New Orleans. (Beebe v.Johnson, 19 Wend., 500.) We are referred, by the defendants' counsel, to a great number of cases to prove that the defendants were excused for the non-delivery of the goods within the 26 days mentioned in the contract, by the fact that the Pennsylvania canal was rendered innavigable by the act of God. I have examined them all, but none of them appear to me to sustain his proposition.
The construction given in the court below to the bill of lading was correct. It was a contract to deliver the goods at Pittsburgh in good order, "all unavoidable accidents *Page 116 
excepted." The exception related to the engagement to deliver in good order, and not to the covenant to deliver them within the time specified in the original covenant. On any other construction it would have altered the original covenant in its most vital and important part, and would indeed have rendered it of little or no value. All the circumstances of the case show that this could not have been the intention of the parties.
The declaration appears to me to be sufficient, and the breaches well assigned, for the reasons stated in the opinion delivered in the court below. (1 Duer, 230.) The plaintiff avers that the goods did not reach Independence until six months after the lapse of the 26 days from the first of April when they were to have been delivered there; and that after their arrival the defendants refused to deliver them to the plaintiff unless the plaintiff would pay the freight thereon, and that he thereupon paid it under protest. It is plain that, according to this averment, the deductions spoken of in the contract would exceed the amount of freight; and the refusal to deliver the goods without payment of the freight was a refusal to make the deductions. The averment of the defendants' refusal to deliver the goods, without payment of freight, is, in substance and effect, an averment of a refusal by the defendants to make the deductions.
The only remaining question is, whether the payment of the freight by the plaintiff at Independence is to be regarded as voluntary. If it was so, this action cannot be maintained; but if it is to be regarded as compulsory, it is otherwise.
When a party is compelled, by duress of his person or goods, to pay money for which he is not liable, it is not voluntary but compulsory. Where the owner's goods are unjustly detained on pretence of a lien which does not exist, he may have such an immediate want of his goods that an action at law will not answer his purpose. The *Page 117 
delay may be more disadvantageous than the loss of the sum demanded. The owner, in such case, ought not to be subjected to the one or the other, and, to avoid the inconvenience or loss, he may pay the money, relying on his legal remedy to get it back again. (Astley v. Reynolds, 2 Strange, 916.) What shall constitute such duress is often made a question. Where the owner is in possession of his goods, the threat of a distress for rent, or of any other legal process, is not such duress, for the party may defend himself against such suit or proceeding. (Preston v.Boston, 12 Pickering, 14.) But if a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment made by compulsion. (Shaw
v. Woodcock, 7 Barn. Cres., 73.) In Chase v. Dwinal (7Maine Rep., 134), the plaintiff's raft was stopped by a boom erected by authority of the State of Maine across the Penobscot river, for the purpose of stopping drift timber, for which the owners of the boom were entitled to demand and recover boomage. The defendant demanded boomage for the plaintiff's raft, to which he was not entitled, and detained the raft until it was paid. The plaintiff brought his action to recover the money back. It was insisted that it was a voluntary payment; but the court held that the plaintiff was entitled to recover, Weston, J., observing, "that replevin would have restored the property unlawfully seized, but to procure a writ and an officer to serve it would have occasioned delay, which might have subjected the plaintiff to greater loss than the payment of the money demanded. Besides, he must have given a bond to the officer to prosecute his suit, and he might meet with difficulty in obtaining sureties, and that the delay in bringing a trespass suit to a finale might have been attended with serious inconvenience." To this might *Page 118 
have been added, that the plaintiff was not bound to take the risk of the defendant's ability to pay the value of the raft, if the plaintiff had recovered in trespass.
In the case under consideration, the property detained was of great value. It was at a great distance from the plaintiff's residence; the necessity of obtaining immediate possession was evidently urgent, and the payment of the freight demanded was clearly compulsory within the decisions here and in England.
The judgment below should be affirmed.
Judgment accordingly.