Edwards, J.
This suit was brought upon a covenant made by the defendants, that they would carry and transport from the city of New-York to Independence in Missouri, and would safely deliver there within twenty-six days from the first day of April then next, any and all goods which the plaintiff might send by their transportation line on or before the said first day of April, at certain prices which were particularly mentioned. This covenant is absolute and unqualified.
It is a well settled rule, that where the law creates a duty or// charge, and the party is disabled from performing it without any default in himself, and has no' remedy over, then the law will excuse him; but where the party, by his own contract', creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or delay by *108 inevitable necessity, because he might have provided against it by contract. (Aleyn, 26, Shubrick v. Salmond, 3 Burr., 1637; Hadley v. Clarke, 8 T. R., 259; Hand v. Baynes, 4 Whart., 204; Beebe v. Johnson, 19 Wend., 500; Angell's Law of Com. Carriers, § 294; Chitty on Cont., 737.) This rule has been uniformly followed, and that, too, even in cases in which its application has been considered by the" court as attended with great hardship. The only exception which has ever been acknowledged is where a party has contracted to do a thing which the law considers impossible. (Co. Lit., 206, b.; Shep. Touch., 164; Beebe v. Johnson, sup.) In this case the referee has not found that the thing covenanted to be done could not by any means be accomplished, and there is no fact from which we can draw any such inference. It is said, however, that the carriers’ receipt, which was given by the defendants to the plaintiff, qualifies the covenant. Whether the covenant could, under any. circumstances, be thus qualified, it is not necessary to inquire. It is sufficient, for the present purpose, that the receipt is in no respect inconsistent with the covenant. The part relied upon merely excepts damage to the goods by unavoidable accident, and it makes no exception in case of delay in their delivery.
The covenant further provides that, in case of failure to deliver the property at the time and place agreed upon, the defendants “ shall deduct ten cents per hundred pounds from the freight bill for every day that the goods are delayed.” It appears from the case that the goods were not delivered until some days after the 26th of April, and that the agents, of the defendants refused to make any deduction from the freight by reason of such delay. It further appears that the plaintiff insisted upon a deduction, and that finally, in order to obtain possession of his goods, he paid the amount, of freight demanded. The defendants now contend that this payment was voluntary, and that the plaintiff is not entitled to recover -for the non-performance of the covenant.
*109 Before examining the question whether the payment made by the plaintiff was voluntary or not, it is proper to refer to the cases upon this subject, as there is an apparent, although, I think, no real discrepancy in the decisions.
In the case of Astley v. Reynolds (2 Strange, 915), the plaintiff had pawned plate with the defendant, to secure the payment of ¿620, and at the end of three years came to redeem it. The defendant insisted on the payment of ¿£10 for interest, which the plaintiff refused to pay, but finding it impossible to obtain his property upon any other terms, he paid .the sum demanded, and brought his action for the surplus beyond legal interest. The court, in giving their opinion, say; “ the cases of payment by mistake or deceit are not to be disputed, but this case is neither, for the plaintiff knew what he did, and in that lies the strength of the objection. But we think that this is a payment by compulsion. The plaintiff might have such an immediate want of his goods that the action of trover would not do his business. -When the rule volenti non fit injuria is applied, it must be where the party had his freedom of exercising his will, which this man had not; we must take it he paid the money relying upon his legal remedy to get it back again.” This decision is referred to with approbation by Ld. Mansfield in the case of Smith v. Bromley (3 Doug., 695), and I have not found any English case in which it has been doubted. In the case of Hall v. Shultz (4 Johns., 240), the defendant had agreed to buy the land of the plaintiff, which was to be sold under execution, and reconvey it to him, on •payment of the money advanced and reasonable compensation for his trouble. The defendant having bought the land refused to reconvey it unless he was paid three hundred dollars, in addition to the principal and interest of the sum advanced, and the plaintiff, in order to obtain his land, paid the sum demanded, and then brought his action to recover back the sum paid. The learned justice who delivered the opinion of the' majority of the court, in reviewing the *110 authorities, referred to Astley v. Reynolds, and said, that the principle of that case had been subsequently overruled by L. Kenyon in the case of Knibbs v. Hall (1 Esp., 84). In the last case, a tenant had paid a larger sum of money for rent than he admitted to be due, upon a threat made by his landlord to distrain, and the report says that Ld. Kenyon was of opinion that this could not be deemed a payment by compulsion, as the defendant might have, by a replevin, defended himself against a distress. I should rather say that Ld. Kenyon, instead of intending to overrule the principle laid down in Astley v. Reynolds, placed his decision upon the ground of the peculiar efficacy and appropriateness of the action of replevin in a case of illegal distress. In the subsequent case, of Cartwright v. Rowley (2 Esp., 722), Ld. Kenyon says that money may be recovered back in an action of assumpsit when it has been paid in consequence of coercion, and by way of illustration, he says ,* “ I recollect a case of -- v. Piggott, where this action was brought to recover back money paid to the steward of a manor for producing at a trial some deeds and court rolls, for which he had charged extravagantly. The objection was taker, that the money had been paid voluntarily, and so could not be. recovered back again; but it appearing that the party could not do without the deeds, so that the money was paid through necessity and the urgency of the case, it was held to be recoverable.” In the case of Smith v. Bromley (sup.),money had been advanced by a sister of a bankrupt to induce a creditor to sign a certificate, which he refused to do without such advance. An action to recover back the money was sustained. In the opinion which was delivered in the . case of Hall v. Shultz, above referred to, it is said that the action was sustained as coming within the letter and reason of the statute which prohibited such inducements being taken. I think that an examination of the report will show that the action was not sustained solely upon that ground, irrespective of other considerations, for Ld. Mansfield says *111 “It is argued that as the plaintiff founds her claim on an illegal act, she should not have relief in a court of justice. If the act is in itself immoral, or a violation of the general rules of public policy, then the party paying shall not have this action, for when both parties are equally criminal against such general laws, the rule is potior est conditio defendentis. But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, &c. If such laws are violated, and the defendant takes advantage of the plaintiff’s condition or situation, then the plaintiff shall recover.” And, he adds: “ This does not depend on general reasoning only, but there are analogous cases, as that of Astley v. Reynolds.” But, notwithstanding some of the views which were expressed by the court in the case of Hall v. Shultz, the decision itself is not inconsistent with any of the cases which were made the subject of comment, for the opinion of the court concludes: “ On the ground that there existed no legal right on the part of the plaintiff to demand or enforce a conveyance, tnat he must be considered in the light of any other purchaser, and that the defendants might make their own terms, and that the plaintiff has voluntarily and with his eyes open fixed the compensation claimed by the defendants, and paid them the money; he can have no claim to call on the court to aid him in getting rid of what he conceives an unconscientious advantage. But if there did exist a legal remedy to enforce a reconveyance, as the measure of the defendants’ claim to compensation rested in arbitrary discretion, the plaintiff, by voluntarily acceding to the terms proposed by the defendants, has lost any right to call on a jury to relieve him from any allowance deliberately fixed by himself.” From this opinion Thompson, J., dissented. In the case of Shaw v. Woodcock (7 Bar. & Cres., 73), the general rule is laid down, that a payment made in order to obtain possession of goods or property to which a party is entitled, and of which he cannot otherwise obtain possession at the time, is a com *112 pulsory and not a voluntary payment, and may be recovered back. In that case the property consisted of certain policies of insurance belonging to the plaintiff, and'upon which the assignees of a bankrupt claimed a lien. In the case of Atlee v. Backhouse (3 Mees. & W., 633, 649), the same principle was recognized, and Baron Parke in giving his opinion says, that there is no doubt of the proposition that if goods are wrongfully taken, and a sum of money is paid simply for the purpose of obtaining possession of the goods again, without any agreement at all, especially if it be paid under protest, that money can be recovered back. In the case of Chase v. Dwinal (7 Greenl., 134), money was paid to liberate . a raft of lumber detained in order to exact illegal toll, and . it was held that the money could be recovered back, on the ground that it was a payment by compulsion. And in the ■case of Fleetwood v. The City of New-York (2 Sandf., 475), Sandford, J., says that the prinople, that money paid where there is no mistake or fraud may be recovered back, has been extended occasionally to cases where bailees or others, who came into the possession of goods lawfully, have . exacted more than was due before they would relinquish .that possession. (See Clinton v. Strong, 9 Johns., 370; Ripley v. Gelston, ib., 201.)
In the case before us, according to the provisions of the agreement which had been entered into between the parties, the plaintiff was clearly entitled to a deduction from the freight. The property consisted of merchandise of great value, which had been transported to a remote part of the . country, in reference to a commercial adventure in Mexico. Every precaution had been taken by the plaintiff to procure its transportation in the shortest practicable period, and it was essential to his interest that he should obtain possession of it immediately on its arrival. The defendants refused to deliver the property without the payment of a greater sum for freight than they could legally claim. The plaintiff *113 protested against the payment of what he considered an illegal and extortionate charge, and finally, from the necessity of the case, and for the purpose of obtaining possession of his property, he paid the illegal demand. I think that a payment, under such circumstances, should not be considered as voluntary.
The other questions in the case arise upon the demurrer to the defendants’ second plea. The plea avers that if the plaintiff has been damnified by reason of anything in the articles of agreement mentioned, he has been so damnified of his own wrong and through his own act, and concludes with a verification. This is taken from a form which is found in the books of precedents, and which is applicable only to a bond of indemnity, and it is not a proper defence to a covenant for the performance of a particular act, such as the transportation of property. (1 Saund., 116, a. 1; Holmes v. Rhodes, 1 Bos. and P., 638, 640, and note.)
' But it is contended that the covenant of the defendants is in the alternative, and that, as it has not been so counted upon, the declaration is defective. The covenant is that the defendants will transport the plaintiff’s goods to a particular place, within a particular time, for a price or sum agreed upon, and that, in case of failure, there shall- be a deduction from such price or sum. It will be observed that it is not a covenant to do a specific act, or pay a sum of money. The act which is to be performed by the defendants is the transportation of the property, and the consequence of non-performance is that the amount which the defendants will be entitled to receive will ¡pe reduced, or, in a certain event, they will be entitled to receive nothing. The receipt of a less sum is not strictly an alternative act to be done. It is rather in the nature of liquidated damages for the non-performance of the act which the defendants had covenanted to perform.
I think the judgment should be affirmed.
*114 Ruggles, J.
The defendants’ second plea is bad on demurrer. In the action of covenant, an excuse for the non-performance must be specially pleaded, and the nature of the excuse must be specially shown, as in an action for rent that the defendant was evicted, or that the plaintiff omitted to perform a condition precedent. (1 Chitty, 429, ed. of 1828; 487 of ed. of 1851, and see the precedents in Covenant in vol. 3.) The defendants’ second plea in this case does not apprise the plaintiff of the nature of the defence, by stating what wrong or default had been done or committed by the plaintiff to defeat his action. There is no precedent for such a plea in an action of covenant, and it is repugnant to the general principles of pleading, by which a defendant is bound to set forth his defence in such manner that the plaintiff may know how to meet it. We are referred.to a precedent of a similar plea to be found in 3d Chitty, page 985 (ed. of 1828). But that was a plea in an action of debt upon a bond of indemnity, and I am unable to perceive how it can be reconciled in that action with the general rules of pleading, unless it was in a case in which the acts against which the indemnity .was provided were in themselves illegal and tortious, and the indemnity therefore void in law. The plea in the present case cannot be supported upon any analogy to the' cases in which the plaintiff may reply, de injuria absque tali causa, to a defendant’s plea in excuse of the act complained of. I think the court below was right in the judgment on the demurrer.
The question between these parties upon the merits of the case, as disclosed by the referee’s special report, depends on the defendants’ liability upon the covenant, and not upon the law applicable to the duty of a common carrier. The defendants covenanted to transport the goods from the city of New-York to Independence in the State of Missouri. But they were not bound to carry them there by any particular route or mode of conveyance. It appears from the contract that the parties expected the goods to be carried by way *115 of Pittsburgh, but there was no covenant on either side that they should go by that route ; and if they had been sent by way of New Orleans, and had arrived in season, it would have been a good performance of the defendants’ covenant.
The delay in repairing the Pennsylvania canal does not excuse the defendants for not delivering the goods in time. The covenant was to deliver the goods within 26 days from the first of April. No provision was made by which they were to be discharged from the obligation upon any contingency whatever. It is a well settled rule of law, that where a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility hi certain events; and in such a case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the control of the party. (Chitty on Contracts, 734, and cases cited, ed. 1842; see Hadley v. Clark, 8 T. R., 259; Beebe v. Johnson, 19 Wend., 500; 4 Wheaton, 214; 6 T. R., 750; Angell on Carriers, § 294, and cases cited.)
If the absolute impossibility of delivering the goods at Independence within the time specified would have excused the defendants, it was incumbent on them to show it. This they have not done. For aught that appears in the case, the goods might have been forwarded in time by way of New Orleans. (Beebe v. Johnson, 19 Wend., 500.) We are referred', by the defendants’ counsel, to a great number of cases to prove that the defendants were excused for the nondelivery of the goods within the 26 days mentioned in the contract, by the fact that the Pennsylvania canal was rendered innavigable by the act of God. I have examined the in all, but none of them appear to me to sustain his proposition.
The construction given in the court below to the bill of lading was correct. It was a contract to deliver the goods at Pittsburgh in good order, “all unavoidable accidents *116 excepted.” The exception related to the engagement to deliver in good order, and not to the covenant to deliver them within the time specified in the original covenant. On any other construction it would have altered the original covenant in its most vital and important part, and would, indeed have rendered it of little or no value. All the circumstances of the case show that this could not have been the intention of the parties.
• The declaration appears to me to be sufficient, and the breaches well assigned, for the reasons stated in the opinion delivered in the court below. (1 Duer, 230.) The plaintiff avers that the goods did not reach Independence until six months after the lapse of the 26 days from the first of April when they were to have been delivered there ; and that after their arrival the defendants refused to deliver them to the plaintiff unless the plaintiff would pay the freight thereon, and that he thereupon paid it under protest. It is plain that, according to this averment, the deductions spoken of in the contract would exceed the amount of freight; and the refusal to deliver the goods without payment of the freight was a refusal to make the deductions. The averment of the defendants’ refusal to deliver the goods, without payment of freight, is, in substance and effect, an averment of a refusal by the defendants to make the deductions.
The only remaining question is, whether the payment of the freight by the plaintiff at Independence is to be regarded as voluntary. If it was so, this action cannot be maintained; but if it is to be regarded as compulsory, it is otherwise.
When a party is compelled, by duress of his person or goods, to pay money for which he is not liable, it is not voluntary but compulsory. Where the owner’s goods are unjustly detained on pretence of a lien which does not exist, he may have such an immediate want of his goods that an action at law will not answer his purpose. The *117 delay may be more disadvantageous than the loss of the sum demanded. The owner, in such case, ought not to be subjected to the one or the other, and, to avoid the inconvenience or loss, he may pay the money, relying on his legal remedy to get it back again. (Astley v. Reynolds, 2 Strange, 916.) What shall constitute such duress is often made a question. Where the owner is in possession of his goods, the threat of a distress for rent, or of any other legal process, is not such duress, for the party may defend himself against such suit' or proceeding. (Preston v. Boston, 12 Pickering, 14.) But if a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment made by compulsion. (Shaw v. Woodcock, 7 Barn. & Cres., 73.) In Chase v. Dwinal (7 Maine Rep., 134), the plaintiff’s raft was stopped by a boom' erected by authority of the State of Maine across the Penobscot river, for the purpose of stopping drift timber, for which the owners of the boom were entitled to demand and recover boomage. The defendant demanded boomage for the plaintiff’s raft, to which he was not entitled, and detained the raft until it was paid. The plaintiff brought his action to recover the money back. It was insisted that it was a voluntary payment; but the court held that the plaintiff was entitled to recover, Weston, J., observing, “ that replevin would have restored the property unlawfully seized, but to procure a writ and an officer to serve it would have occasioned delay, which might have subjected the plaintiff to greater loss than the payment of the money demanded. Besides, he must have given a bond to the officer to prosecute his suit, and he might meet with difficulty in obtaining sureties, and that the delay in bringing a trespass suit to a finale might have been attended with serious inconvenience.” To this might *118 have been added, that the plaintiff was not bound to take the risk of the defendant’s ability to pay the value of the raft, if the plaintiff had recovered in trespass.
In the case under consideration, the property detained was of great value. It was at a great distance from the plaintiff’s residence ; the necessity of obtaining immediate possession was evidently urgent, and the payment of the freight demanded was clearly compulsory within the decisions here and in England.
The judgment below should he affirmed.
Judgment accordingly.