# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1862,
## AT PLYMOUTH.

PRESENT

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

THE President, Directors and Company of the Wareham
Bank *vs.* Nathaniel B. Burt & another.

A common carrier who, by a written agreement with the owner of notes, has undertaken
to procure their renewal or to return them, cannot excuse himself for the non-perform-
ance of his undertaking by proving that an indorser, to whom he had delivered them for
examination and comparison prior to the renewal, was summoned as trustee of a subse-
quent indorser, and thereupon refused to give them up or renew them.

Contract against common carriers, upon the following agree-
ment: " Sandwich, Jan. 18, 1859. Rec'd from Z. R. Hinckley,
for the Wareham Bank, two notes bearing date Aug. 15, 1857,
for six hundred dollars each, due July and August 1858, which
I am to get George Stacy's renewal or return same to said

10*

bank within reasonable time to transact said business for said Wareham Bank. Witherell Co. Exp. Wm. E. Boyden."

At the trial in the superior court, before *Vose*, J., it appeared that Z. R. Hinckley, being the owner of the two notes, which were signed by George Stacy, payable to his own order, and indorsed at that time by Ashley Hibbard and Frederick W. Henshaw, transferred them by indorsement to the plaintiffs, who held them at the time of their maturity. The notes were not paid, and due notice of their dishonor was given to the indorsers. Stacy, Hibbard and Henshaw lived in Montreal, Canada East; and, a previous arrangement having been made that the notes should be sent by the plaintiffs for renewal, they were delivered for that purpose to the defendants, who were common carriers between Hyannis and Boston, under the special contract above set forth. The defendants, by themselves and other expresses, carried the notes to Montreal, gave notice to Stacy, had a time fixed for their renewal, at the office of Hibbard, and, at the time and place so fixed, their agent delivered the notes to Hibbard for examination and comparison with the new notes, prior to the renewal, and while Hibbard had them, Henshaw, Stacy and an officer came in, and a process of foreign attachment, in which Henshaw was plaintiff, Hinckley defendant, and Hibbard and Stacy garnishees, was served upon Hibbard, who thereupon refused to sign the renewal notes or give up the old ones. The officer did not take possession of the notes. The writ was duly entered in court, and the plaintiff recovered judgment against the defendant and garnishees, which was paid by Stacy and Hibbard. The plaintiffs were duly notified of the pendency of the process of foreign attachment, but did not intervene or appear therein. The legal proceedings in the suit in Canada were set forth at length, but are not material to be recited here.

The judge instructed the jury that, if the agent of the defendants at Montreal did not collude with either of the parties there to effect the attachment, but, acting in good faith towards the plaintiffs, delivered the notes for renewal to Hibbard, and the precept was served as above set forth, this service and the

withholding of the notes by Hibbard from him were a sufficient excuse for the defendants' failure to return them. The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions.

*É. Ames,* for the plaintiffs. The defendants' contract covered the whole distance. *Nutting* v. *Connecticut River Railroad,* 1 Gray, 505. *Fitchburg & Worcester Railroad* v. *Hanna,* 6 Gray, 539. They cannot be allowed to insist that a portion of the service undertaken by them was not as common carriers. *Atkinson* v. *Ritchie,* 10 East, 530. *Paradine* v. *Jane,* Aleyn, 27. Angell on Carriers, §§ 59, 294, and cases cited. The facts proved furnish no excuse to the defendants for the non-performance of their undertaking. Angell on Carriers, §§ 193, 294. *Gosling* v. *Higgins,* 1 Camp. 451. *Spence* v. *Chodwick,* 10 Q. B. 517. *Evans* v. *Hutton,* 4 Man. & Gr. 954. *Benett* v. *Peninsular, &c. Steamboat Co.* 6 C. B. 775. *Crouch* v. *London, &c. Railway,* 14 C. B. 254.

*G. Marston,* for the defendants. The stringent rule, that a common carrier is liable for any failure to fulfil his undertaking, not occasioned by the act of God or the king's enemies, was established as far back at least as the time of Elizabeth, upon supposed reasons of public policy, arising from the danger of fraud on the part of the carrier and his agents, and of collusion with thieves and robbers. *Coggs* v. *Bernard,* 2 Ld. Raym. 909. *Riley* v. *Horne,* 5 Bing. 217. This rule should be modified, to meet the needs and methods of modern transactions in business. The defendants were prevented from performing their undertaking by the interposition of legal process. Although there was no manual seizure of the notes by the officer, the service of the process placed them under the control of the law. Hibbard had the right, if it was not his duty, to hold them until it should be determined whether they belonged to Hinckley. The fact that they were not Hinckley's property is immaterial. *Stiles* v. *Davis,* 1 Black, (U. S.) 106.

The agreement to get the notes renewed was not made by the defendants as common carriers, and, in performing this part of their agreement, they were only bound to use ordinary care

and diligence. This distinction has been repeatedly made in analogous and familiar cases, as where the carrier held goods as warehouseman, wharfinger or forwarding merchant. But perhaps a case more nearly like the present is where the carrier is also a factor to sell the goods for the owner and return the proceeds, in which case he is only liable for negligence in selling them. 1 Parsons on Con. 684, *& note.* Story on Bailm. §§ 546–548. *Harrington* v. *M' Shane,* 2 Watts, 443. *Taylor* v. *Wells,* 3 Watts, 65.

HOAR, J. The rights of the parties to this action must be governed by the express terms of their written contract. The rule so clearly stated in *Paradine* v. *Jane,* Aleyn, 26, and so often cited, that " when the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract," is directly applicable. *Walton* v. *Waterhouse,* 2 Saund. 422, *n.* *Atkinson* v. *Ritchie,* 10 East, 533. *Barker* v. *Hodgson,* 3 M. & S. 267. *Beebe* v. *Johnson,* 19 Wend. 500. *Phillips* v. *Stevens,* 16 Mass. 238.

The court below ruled that the attachment by the trustee process in Canada constituted a valid excuse for the non-performance of the defendants' contract. But we are all of opinion that this ruling cannot be supported. The contract had no reference to the debt which the notes created. It was simply to carry and return those pieces of paper, or to bring back notes made in renewal of them. The defendants were not obliged to give them up to Stacy or Hibbard, without receiving at the same instant the new notes, which Stacy had agreed to give in exchange; and had no right to do so. The notes were the property of the plaintiff corporation, and there was nothing in the process served upon Stacy and Hibbard to justify their detention. The notes were not seized by the officers of the law, and any doubts which Hibbard might entertain as to the right of property in them, or in the debt of which they were the evidence, could not be a justification for refusing to deliver to the plaintiffs' agent papers which had been borrowed for a moment for a specific purpose. .

There is a recognized exception to the rule that a party must perform his contract as he has made it, when the performance has become illegal. And we do not mean to decide that a seizure of these notes by legal process, or the lawful decree or order of a court in Canada, requiring that they should be retained within that jurisdiction, might not have furnished an excuse or justification for the omission to return them. But there was no process *in rem* affecting these specific pieces of paper; and no suit or process to which the plaintiff was a party, by which any of the property of the Wareham Bank was in any way affected. The case therefore stands just as it would if no trustee process had been served or issued; and the rights of the parties are the same as they would have been if Hibbard had retained the notes without setting up any pretence of authority.

The defendants have argued that the obligation of the common carrier terminated when the notes were presented to Hibbard for renewal, and would not again attach until the notes were returned to them, or new ones taken in exchange. But by the express agreement the notes were not to be delivered unless the new ones were received. The contract must be governed by the same rule as if the carrier had taken a note, with an express agreement that he would bring it back unless the money due on it was paid to him. It surely would not be any performance of his contract, nor sufficient excuse for failure to perform it, to say that he handed the note to the debtor without getting the money, and that the debtor refused to give it up. And see *Fitchburg & Worcester Railroad* v. *Hanna,* 6 Gray, 539.

*Exceptions sustained.*