By the Court. Duer, J.
We entirely agree with the referee, that the obligation of the defendants, resulting from their covenant to deliver the goods of the plaintiff at Independence within a stipulated period, was absolute and unconditional, and that its effect as such was not at all varied by the clause which immediately follows in the articles of agreement. This subsequent clause was plainly inserted for the benefit of the defendants, by limiting the penalty, to which, in the event of a delay in the delivery of the goods beyond the specified period, they would be liable, to a sum not exceeding the freight they would be entitled to receive, and was certainly not designed to give an election to the defendants not to perform, at all, the duty they had undertaken to discharge.
It is not necessary to deny that in construing the articles of' agreement, the terms of the receipt or bill of lading for the goods must be taken into consideration, so that the two instruments may receive, if possible, a consistent interpretation. But there is in reality no variance or discrepancy that needs to be removed or reconciled. The exceptions in the bill of lading relate entirely to damages affecting the condition of the goods themselves, not at all to a loss resulting to the owner from a delay in their delivery. They are exceptions from the provision to deliver them in good order, not from the covenant to deliver them within a specified time.
The referee has very properly found that the delay in the delivery of the goods was produced by causes beyond the control of the defendants, in other words, was the result of unavoidable accidents; but he has just as properly decided, that this fact constitutes no defence to the action. By the terms of their covenant the defendants took upon themselves the risk óf being able tg deliver the goods within a required and specified *228 period, and their failure to make this delivery, no matter from what cause it arose, was a breach of their covenant, rendering them liable in damages to the plaintiff" to the entire amount stipulated in the articles of agreement.
The plaintiff must therefore be entitled to remuneration equal to the deduction from the freight to which he was entitled when the goods were delivered, that is, a sum corresponding with the amount which he then paid, unless it has been proved that he waived all claim to this deduction, at the time of the delivery of the goods, or with a full knowledge of the facts made a voluntary payment of the whole freight that was demanded.
The proof, however, that has been given, so far from warranting this conclusion, establishes the fact, that the plaintiff, when he claimed the delivery of his goods, instead of abandoning, insisted upon his rights, and that the payment then made by him, so far from being voluntary, was, in judgment of law, compulsory and coerced. As the deduction to which the plaintiff was then "entitled, which- was equal to the whole freight demanded, was wrongfully withheld, it necessarily follows that the defendants, who stipulated that the deduction should be made, have violated the covenant, and that the plaintiff is entitled to recover back, as damages, the whole sum with interest, which, in disregard of his protest, he was then required and forced to pay. It is proved by the witness More-head, that when the plaintiff claimed- the delivery of his goods, he objected," as he had a right to do, to the payment of any freight whatever ; and that the captain of the. steamboat in which the goods had been transported from Pittsburgh, refused to deliver them upon any other condition than the payment of the whole freight he had been desired to collect, and which was in reality all that would have been due bad the goods been delivered in time; and the fact of such refusal is not merely proved by the witness, but is confessed in the receipts which the captain gave for the payments he exacted, B was under these circumstances that the required payment Was made, and there is no pretence for representing it as made in compromise of a disputed claim, since it embraced the whole sum that was demanded. It was a payment" extorted as the means of releas *229 ing the goods from an unlawful detention-r-a payment extorted by duress, not indeed of the person, but of the property of the plaintiff.
The law upon this subject has been very accurately stated by Hr. Justice Sandford, in a case in our Reports, to which, as sustaining his own views, we were referred by the learned counsel for the defendants. In delivering the opinion of the court in the case of Fleetwood v. The City of New York (2 Sand. S. C. R. p. 475), that eminently learned and cautious judge admitted that there are “ cases of duress of personal property in which payments for its relief are deemed involuntary, and the money may be recovered back.” He added, that although “ most of these cases have arisen upon seizures of goods under revenue or excise laws, yet the principle has been extended to cases where bailees or others, who came lawfully into the possession of goods, have received more than was due before they would relinquish such possession, and that the principle is founded upon the movable and perishable character of the property, and the uncertainty of a'personal remedy against the wrong-doer.” (2 Sand. pp. 479,480.) On the subj ect of payments compelled by duress of property, the learned judge referred to the cases of Chase v. Dwinall, 7 Greenleaf, 134; Ellicott v. Swartwout, 10 Peters, 137; and Clinton v. Strong, 9 John. 300; to which many others might be added:— /
It is scarcely necessary to remark, as it is too obvious to escape attention, how exactly, in all respects, the well chosen and carefully weighed language of our lamented brother is applicable to the circumstances of the case now before us. The captain of the steamboat was a bailor who came lawfully into the possession of the goods, and who exacted more than was due as the condition of their delivery. The goods were movable and perishable, and considering their character and value, their remote situation, and the nature of the commerce—the inland trade with Mexico—in which they were employed, the personal remedy of the plaintiff against the wrong-doers was, in an eminent degree, inadequate and uncertain: It would be an abuse of language, and an affront to common sense, to say that the payment thus made by the plaintiff, as the necessary and only means of recovering the possession of his property and of secur *230 ing himself from a heavy, immediate, and perhaps, in the result, irreparable and ruinous loss, can be treated as voluntary^ and in denying to him upon this ground the relief that he seeks, we should violate, as it seems to us, the plainest rules of morality and justice.
Such being our views of the facts and of the law of this case, we cannot do otherwise than affirm the judgment that has been rendered, unless we are compelled to assent to the validity of the objections that remain to be stated. These objections, in our opinion, do not affect the merits of the case ; but although they may be regarded as technical and formal, yet, if they are valid, it will be our duty to give them effect by a reversal of the judgment.
It is insisted that the two covenants of the defendants, the covenant to deliver the goods at Independence within a limited time, and that binding them in the event of a delay in the delivery, beyond the period specified, to make a proportionate deduction from the freight, are in their nature alternative, and that, according to the just rules of pleading, the breaches ought to have been so assigned as to negative both alternatives ; but that, in reality, it is not averred in the declaration, nor was it proved upon the trial, that there was any breach of the second covenant by the refusal of the defendants to make that deduction from the freight which they had stipulated to allow.
It is a necessary conclusion from the observations we have already made, that we do not consider the covenants in question as alternative. Covenants are alternative, in the proper legal sense of the term, whdn they give an election to the party bound by them to perform one or other of the acts to which they relate, and by the fulfilment of one covenant to discharge himself, wholly, from the performance of the other. The covenants in question gave no such election to the defendants. The first, imposed upon them a positive duty; the second, instead of releasing them conditionally from this duty, fixed the measure of damages for its violation. The defendants had no election not to deliver the goods, as both covenants suppose the delivery to be made. The declaration, therefore, in our judgment, would have been good had it set forth only the first covenant, and claimed damages for its breach, leaving the *231 defendants to answer the claim for damages, by showing either that the necessary deduction from the freight had been made, or that the plaintiff, by a voluntary payment of the whole freight, had waived his right to demand it.
The objection, however, that we are considering is untenable, even upon the supposition that the declaration ought to have assigned a breach of both covenants-—-for such in our opinion is its actual form. Both covenants are set forth, and a breach of each is alleged, and the refusal of the defendants to make the necessary deduction from the freight is sufficiently averred, and has been clearly proved.
We have seen' that the deduction to which the plaintiff was entitled, was equal to the freight demanded and paid. The declaration therefore in averring, as it expressly does, that the plaintiff when the goods were delivered denied the right of the defendants to the freight they claimed, and made the payment under protest, avers substantially and by a necessary implication, that he claimed, and the defendants refused to make, the deduction which they had covenanted to allow. By holding the declaration to be bad and the plaintiff therefore not entitled to recover, because the breach, as assigned, negatives not the words, but only the meaning and import of the covenant, we should indeed “ entangle justice in a net of form,”—a reproach that in the present age, no court of justice can be willing to incur, or be excused for meriting.
It was next insisted, that even upon the construction that we have given to the covenants of the defendant there is a fatal variance between the declaration and the proof—a variance which makes it our duty to set aside the referee’s report. The declaration avers that the freight, which the plaintiff claims to recover back as damages, was paid to the defendants, whereas the proof shows, that the payment was made to the Captain of the steamboat who had the goods in charge. It is not denied, however, that if the captain is to be regarded as the agent of the defendants, the declaration is properly drawn, and the averment fully sustained by the proof.
•The conclusive answer, therefore, to the objection is, that the captain was the agent of the defendants; an agent, by whose acts and declarations, in our opinion, they were bound. They *232 contracted personally to deliver the goods, not at Pittsburgh but at Independence, and although they were only the proprietors of the line that ended at Pittsburgh, their contract was entire and embraced the whole necessary transportation. The persons therefore whom they employed to transport the goods from Pittsburgh to Independence, and there deliver them, were their agents, for the plain reason, that they were acting at' their request and on their behalf, in the discharge of a duty which they had' themselves undertaken to perform. As no freight was to be paid until the final delivery of the goods, the captain of the steamboat was their agent, not merely to make the delivery, but for the collection of the freight, and as such they were bound to instruct him to demand no more than the sum that upon the arrival of the goods at Independence would be due to them under their agreement with the plaintiff. Under these circumstances the refusal of the captain to deliver the goods, upon any other terms than the payment of the whole freight, was their refusal, and the extorted payment made to him, a payment to themselves. The referee has intimated strong doubts whether the money thus paid could have been recovered back, had there been no subsisting lien upon the goods, or the payment had been made to the defendants in person, but the doubts thus expressed we are not to be understood as sharing. It is true that the case of the plaintiff is strengthened, by the fact that the captain of the steamboat had a lien upon the goods, for that portion of the freight which was due for their transportation from Pittsburgh to Independence ; but had there been no subsisting lien, and had the whole freight been exacted by the defendants in person, we must still have held that the plaintiff was entitled to recover. It would still have been true, that the defendants were bailees, exacting more than was due, as the condition of relinquishing their possession of the goods; and a payment made to them under a denial of their right, and for the sole purpose of reclaiming the goods from an unjust detention, we must still have regarded as coerced, and, therefore, void and recoverable. We however agree with the learned referee that if there was any variance between the declaration and the proof, it was a variance by which the defendants were not, and could not have *233 been misled, and which, therefore, under the provisions of the Code, he was justified in disregarding.
The exceptions to the ruling of the referee in admitting the testimony of Morehead, and in rejecting the evidence subsequently offered to be given by the defendants, do not require a special notice or discussion. They are shown to be groundless by the observations already made.
The judgment is affirmed with costs.