Hoffman, J.
—I agree with the counsel of the defendants that the consent of October 24, 1853, must be read in connection with the provision in the policy, which it affects. The case then is thus presented. ' The life of the plaintiff’s intestate was insured by the contract, while he remained within certain territorial limits. If be went beyond those limits without consent, the policy was to be void. Then the consent modified the restriction, permitted him to go within the before prohibited limits, but required that he should return from within them, by the 10th of July, 1854.
I treat then the legal scope and import of the contract as stringent as it can possibly be treated, when I regard it, as if on the twenty-third of October, the parties had made the insurance, giving liberty to the assured to go and remain south of the specified bounds down to the 10th of July, 1854, and declaring that the policy should be void if he was not north of those bounds by that day. The license then would be. accompanied with a provision or stipulation, or condition, whatever may be the proper term; and so here, the relaxation of the original prohibition is accompanied with the same modification attached to it.
The learned counsel of the defendants insists that there is a condition precedent here, which must be literally and absolutely fulfilled, before a recovery can be had. He must, upon the theory he advocates, sustain a proposition like this; that the agreement was, that the company would be liable, if death occurred within the specified limits, between the 23d of October, 1853, and the 10th of July, 1854; or beyond those limits at any other period of the year; but in no other event. The occurrence of death, under one or the other of these contingencies, was the casus foederis, a condition precedent to any liability.
That the whole instrument, the policy and indorsement taken together, admits of such a construction, may not be doubted; neither can it be questioned that no particular form of words is necessary to constitute a condition precedent. “ It is dependent upon the intention of the parties, to be collected in each case *542 from the terms of the agreement itself, and from the subject matter to which it relates.” (Per Timbal, Ch. J., 2 Man. and Gran., 266.)
Such cases as Graves v. Legg, (25 Eng. L. and Eq. Rep., 552,) Kearney v. The West Granada, &c., Co., (38 id., 327,) and Inman v. The Western Fire Ins. Co., (12 Wend., 452,) are striking examples of conditions precedent deduced from words, portions of a sentence, even parenthetically used, and far from wearing the form of a condition or proviso.
. But I do not think that even in the case I have supposed, the construction of the agreement contended for as above stated, is a necessary one. The distinction is considerable, between language defining the case of a liability and excluding expressly every other case, and words simply declaring that unless a party was beyond a certain place by a given day, the assurers should be exempt. I think the consent is to be regarded as a qualification, and a qualification upon terms. Assume that those terms substantially amount to a proviso, or condition, it is not one, inflexible, arbitrary and incapable of exception, or of anything short of literal performance. Full license is accorded to be within the before excluded limits for the period mentioned. There is an obligation imposed upon the party to return, there is an implied stipulation on his part to return, treat it as in substance a condition that he should return; and yet there is not the absolute exclusion of every possible excuse for not returning by the day fixed.
If so, we come to the question whether the facts found by the special verdict are sufficient to dispense with the literal fulfillment of what is now treated as a condition.
It admits, indeed involves, the idea of an intention to return within the period prescribed. It is found that Baldwin’s not being north of the boundary was solely caused by the illness which resulted in his death. And we see that when his inability to travel commenced, he had twenty-nine days to perform a journey which required but six.
In the case of Carpenter v. Stevens, (12 Wend., 589,) these propositions are laid down: 1st. “ That where the condition of a bond or recognizance is possible, at the time of making it, and before it can be performed, becomes impossible by the act of God or of *543 the law, or of the obligee, there the obligation is saved, as if the condition is, that a man shall appear at the next term of a Court, and before the day he dieth, the recognizance is saved.” It is as if the duty had been fulfilled. 2d. “ That where a right of action depends upon the performance of a condition precedent, performance cannot be excused, unless it is dispensed with or prevented by the opposite party, although it has become impossible without any default on the part of the plaintiff, or even by the act of God. The rule is different, where the impossibility of performance is set up as matter of defense.”
The case was this: The defendants had given a replevin bond to the sheriff for the return of a mare taken by him. Judgment of return was given for the defendants in the replevin suit. In an action on the bond, the plea was, that the mare had died from inevitable accident, and without the fault of the obligors. Judgment was given for the defendants. Lord Coke’s authority is cited, (1 Inst., 206, a, b).
The case of Williams v. Lloyd, (William Jones, 179,) is to the same point. A horse was delivered to the defendant, upon an undertaking to" return it on demand. It was pleaded that the horse had died before request made, and the plea was held good.
So in The People v. Manning, (8 Cow., 297,) the action was upon a recognizance for the appearance of a sheriff arrested on attachment, at the next term of the Court, viz., the third Monday of February ensuing. The plea was, that on the 1st of February the sheriff was taken violently sick; was confined to his house and bed; and could not be removed therefrom, and continued sick until he died on the 22d of March. It was held, that the recognizance was like a bond with a condition, a compliance with which had become impossible by the act of God. And in such a case, the performance is excused; no action lies. Coke upon Littleton, (206, a,) is cited. Judgment was rendered for the defendants on demurrer to the plea.
For the second proposition stated in Carpenter v. Stevens, the following cases are cited: Moakley v. Riggs, (19 John., 69; Wood v. Worsley, (2 H. Black., 574; S. C, 6 T. R, 710; Routledge v. Burrell, 1 H. Black., 258; Taylor v. Bullen, 6 Cow., 624; and Inman v. The Western Insurance Company, 12 Wend., 452.)
There is nothing in the case of Moakley v. Biggs, but a sug *544 gestión that it may be doubted whether the engagement by one to perform an act on the previous performance of another act by the other, can be enforced without showing the previous act done; or that its performance was dispensed with or prevented by him who was to perform the subsequent act. The decision rested upon the neglect to do a previous act, which it had been in the power of the party to perform for some time after performance would have discharged him.
In Taylor v. Bullen, (6 Cow., 624,) Taylor and Otis had warranted the collection of a promissory note, and to pay all costs of suits legally commenced for its recovery. One Stroud, was the maker. The note was to run two years. Stroud died before its maturity. In an action on the guaranty the plea was, that he died seised and possessed of large real and personal estate. It was held that the condition had not been complied with, as the heirs had not been sued. Chief Justice Savage says: “Here was a condition precedent; that condition was not' confined to a prosecution of Stroud himself. Had it been so, then indeed the plaintiff would possibly have'been excused, as that was rendered impossible by the act of Grod, the death of Stroud. Even this however may be doubted.” He then cites the language of Spencer, Oh. J., in Moakley v. Riggs.
Wood v. Worsley was the case of a condition in a policy ot insurance, that a certificate of the minister and church wardens to a certain fact should be produced. It was not procured, and was refused without cause. It was held essential.
Routledge v. Burrell, ut supra, is to the same point. And this decision was recognized and followed in a very similar case in Maine. (Leadbetter v. The Ætna Ins. Co., 1 Shepley, 265.)
So in Campbell v. French, (cited by Oh. J. Savage, 6 T. R., 200,) the condition was to pay bills if returned protested for non-payment, and they were returned protested for non-acceptance. It was held, not to be complied with.
In these cases there was no impossibility or insuperable difficulty, in literally performing the agreement; and strong reasons existed, resulting from the nature of the contract, for requiring a strict fulfillment. Those reasons are clearly set forth in the opinions in Wood v. Worsley, particularly in that of Mr. Justice Lawrence. . Inman v. The Western Insurance Co., (12 Wend., *545 452,) was of the same character. The policy there required notice of the loss to be given forthwith. It was not given for thirty-eight days after the fire occurred.
In the People v. Bartlett, (3 Hill, 570,) Chief Justice Nelson, states broadly, that it is a general principle of law, that where the performance of the condition of a bond or recognizance has been rendered impossible by the act of God, or of the law, or of the obligee, the default is excused. He cites Bac. Abridg., Title, Condition, Vin. Abr., Ibid, and the cases.
There is another class of cases of which Harmony v. Bingham, (1 Duer, 209, 2 Kernan, 99,) is a marked example. Under a contract to transport and deliver goods at a certain place, by a certain day, without any exception, the obligation is absolute; and a defense that unavoidable accident, such as freshets in a river, prevented performance is unavailable. The rule as expressed in Paradme v. Jane, (Aleyn, 26,) is stated as the law, and need not be repeated.
When the case of Harmony v. Bingham was in the Court of Appeals, the learned Judge observed, “ It is not found that the thing covenanted to be done could not by any means be accomplished ; and there is no fact from which we can draw any such inference.”
. Many of the leading authorities will be found to have in them this important element, that there did exist means to accomplish or meet the condition. Such was the case in Oakley v. Morton (1 Kern., 25); in Beatson v. Schenck, (3 East., 233); in Inman v. The Western Insurance Co., (12 Wend., 452); and in the strong case of Beebe v. Johnson (19 id., 500).
It may also be useful to advert to the series of decisions in the slaveholding states, upon bonds given for the hiring of slaves for a particular period. It is held in many of them, that the death of some of the slaves within the period, is a ground for an abatement of the sum to be paid; in others, a different rule prevails. The authorities are fully stated in Harman v. Herring, (25 Miss. Rep., 135,) in which it was held that no deduction should be made. The opposite cases proceed on the ground that the act of God had interfered to prevent the entire fulfillment of a contract. (See also Mozely v. Baker, 2 Sneed’s Rep., 370.)
*546 The cases from 6th and 8th Cowen before cited, and the rule of law which they recognize and apply, have not as far as I am aware, been overruled or controverted. They establish, that an inability, short of absolute impossibility, may exempt a party from his liability under a contract, if this inability result from the act of God. The rule laid down in the other cases is not then imperative, and without exception or qualification. In some instances at least, that which amounts to an act of God, creates an exception.
After a careful examination, I have not been able to find a decision in which the distinction suggested by Chief Justice Spencer, has been acted upon in a case similar to the present; where, though the events, amounting to an act of God, would have constituted a defense had Baldwin or his estate been in the position of a defendant, they form no ground for supporting a claim. • Had there been a penalty to be paid by the assured, for an absence beyond the day, it is clear he would have been exempted from it. I do not see any satisfactory reason for the distinction referred to, in a case like this. Had the condition been so positive and explicit as to preclude any exception, my views would have been different.
But the language of the provision admits of the reasonable construction, that absolute inability to return by the day prescribed, from accidents consistent with the attempt or fixed intention to return, may be treated as a contingency within the view of the parties, and the contract be subjected to such contingency. If it be urged, why then did not the assured provide for it, the reply may be, why did not the insurers use language which would preclude the possible exception?
My conclusion is that in a life policy, where the performance of such a condition or provision as exists in this case, rests with the assured exclusively, which does not admit of his employing any agency, but is wholly personal, and he is disabled from performance by the act of God, without neglect or default of his own, but with the intention to perform literally, the condition is saved, and the insurers are liable.
I consider also that the death which here took place, was a death from the act of God. “It was something in opposition to the will and act of man.” (Lord Mansfield, Forward v. Pittard, *547 1 T. R., 29; Oakley v. The Pori of Portsmouth, &c., 84 Eng. L. and Eq. R, 530.)
I have considered this case precisely as if in the license or consent of the 24th of October, 1853, the words had been “provided,” or “ upon condition that he be north of the south bounds,” &c. I think the order should be affirmed.
Bosworth, Ch. J.
—James J. Baldwin, the insured, was taken sick, at Appalachicola, in Florida, on the 11th of June, 1854. If he had died there, before the tenth of the following July, of the disease with which he was attacked on the eleventh of June, the defendants would be liable on the policy. So too, if he had started north, in time, and so as to have passed north of the south bounds of Virginia by the 10th of July, and had died north of such bounds on the eleventh of July, the insurers, on the principies contended for by them on the argument before us, would have been liable, even though such a journey, performed under such circumstances, diminished the insured’s chances of recovery.
Under this construction of the license granted to the insured, the latter, in order to keep the policy in force, if taken sick in Florida on the 11th of June, must start north, at whatever peril to his life; in time to be and succeed in being north of the south bounds of Virginia, a living man, by the 10th of July. If he does not, this policy would become void. And this consequence follows; although there be the highest moral certainty, that if he performs the journey, his disease will be, thereby, so aggravated that his death will be inevitable, and the company made liable to pay the sum insured. Hence, if that is the proper construction of the license or consent, the insured, if taken suddenly ill, when he has five times as long a period remaining as is ordinarily required to perform the journey, must, although there may be a reasonable prospect of his restoration to health by a day subsequent to the tenth of July, if he continue where he is; either forfeit his policy if he remains there, or earn the sum insured by terminating his life, before the tenth of July south of the south bounds Virginia, or north of them immediately thereafter, by reason of the rash and hazardous attempt to perform such journey.
In other words, under Such a state of facte as the evidence in *548 this case established, in order to keep the policy in force, the insured must do acts which will unavoidably subject the insurers to a loss of the sum insured, and thus literally “ die by his own hand,” in which event, the policy, by its terms, becomes .void.
If the insured, when taken sick, had been north of the south bounds of Virginia, but absent from his home, and the nature of his disease and its aggravated condition were such, at the. time, as in the judgment of those conversant with such subjects, death would inevitably ensue if he should attempt to journey home; while his recovery would be, in the highest degree, probable if he continued wheré he was, and submitted to the regimen prescribed by competent professional advisers, and he. should nevertheless, against such advice, persist in the . attempt to journey home, and by reason of it, should die on the way, his conduct would fall within the spirit of the condition last referred to, though it might not within the letter of it, as it has been judicially interpreted. (Breasted v. The Farmers' Loan and Trust Co., 4 Seld., 299; Parsons Merc. Law, 544, note 1.)
On. such a state of facts, it would be difficult to say that, the death of the insured was not caused by his own default or neglect.
As the policy in question is one upon the life of the deceased, I think the terms of the license or consent should be so construed as not to require him to attempt to return north of the south bounds of Virginia by the tenth of July, when,' in consequence of sickness suddenly and unexpectedly contracted or developed, an attempt to do so, would be certain, so far as the human mind can foresee results, to produce the, death of the insured.
By the ordinary route and mode of travel, hé Could have passed from the place, where he was taken sick, north of those bounds in six days. Excluding the eleventh of June, on which day he was taken sick, and the tenth of July following, ' there were twenty-eight days remaining.
He was taken and became “so sick and ill in body as to be unfit and unable to travel, and to start on his return home,” and continued so until he died.
I do not think the consent or license should be so construed as to require him to start in that condition, with the certainty *549 that, if he did start, he would die, in consequence of his sickness and of such acts on his part south of the south bounds of Virginia before the tenth of July, or north of those bounds immediately thereafter.
That, it could not have been the intention of the parties to this contract that, the insured, under the state of facts established by the special verdict, should do acts which would make his own death inevitable, in order to a proper performance, on his part, of his duty, as prescribed and declared in such license or consent..
That, by a - just construction of the policy, he was insured against death resulting from a disease contracted or first developed on the 11th of June, 1854, at the place where he then was, if the disease was of a character that his death was in the highest degree probable, if he attempted to travel.
And that, his being north of the south bounds of Virginia by the 10th' of July, 1854, is not a condition precedent to the right to maintain an action upon the policy in case of his death, in such sense that, if in consequence of sickness, discovered on the eleventh of June, (at a distance from such bounds of six days ordinary travel,) and so severe that his death will be in the highest degree probable if he attempts to travel, the insured must endeavor to reach these bounds, with the certainty, that if he does, he will die before the tenth of July and before crossing them, or as soon as he has passed north of them, either on the tenth, or immediately thereafter. The consent or license, should be so construed as to conform to the intent of the parties, to be collected from the terms of the whole agreement, and the subject matter to which it relates.
I. think, it was the intent of the parties that, the defendants should be liable, in the event that has happened, and on its happening under the circumstances, under which it is proved to have, occurred. :
The order should be affirmed.
Order affirmed.