If it be conceded that the performance of the condition of the defendants' bond became impossible by the *Page 150 
non-attendance of the County Judge at the time and place appointed for making the application therein mentioned, and thereby agreed to be made, they are nevertheless liable.
It is a settled rule of law that where a party by his own contract absolutely engages to do an act, or creates a duty or charge upon himself, he is bound to make it good notwithstanding any accident or other contingency not foreseen by or within the control of the party, unless its performance is rendered impossible by the act of God, or of the law, or the obligee; but where the law creates a duty or charge and a party is disabled from performing it without any default in himself and has no remedy over, then the law will excuse him.
This principle is fully sustained by the leading case ofParadine v. Jane (Aleyn, 26), and also in our own courts by the cases of Harmony v. Bingham (2 Kern., 99); Beebee v.Johnson (19 Wend., 500); and The People v. Bartlett (3 Hill, 571, and the authorities therein cited).
The defendants, in the case under consideration, entered into the bond of their own volition, and as their voluntary act. The law did not impose any obligation on them to execute it.
It is true that it was entered into to relieve the defendant Herrick from the consequence of an adjudication made by the County Judge, before whom the proceeding under the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26, 1831, had been instituted by Cobb, the obligee therein. That adjudication had declared him to be guilty of a refusal to apply property and rights of action which he had, to the payment of a judgment recovered by Cobb against him; and subjected him to imprisonment in consequence thereof. It then became the duty of the judge to commit him to the county jail, but he had the right to prevent such commitment by doing either of the following acts:
1st. By payment of the debt or demand claimed, with the costs of the suit, and of the proceedings against him.
2d. By giving security, satisfactory to the officer, that the debt or demand, with the said costs, should be paid within sixty days, with interest. *Page 151 
3d. By delivering to the officer an inventory of his estate and an account of his creditors, and executing an assignment of his property for the purpose specified in the act; and,
4th. By giving the bond now in question.
The proceeding was instituted for the enforcement of a private right by the judgment creditor, and resulted in securing to him a remedy which he did not previously possess.
It was optional with the debtor, thus proceeded against, to permit the creditor to pursue that remedy, or at his election to deprive him of it, by either of the modes above mentioned. He elected to give the bond in question, and the appellants, who had previously no connection or interest in the transaction, became his sureties. It was an act which they were under no legal duty to perform. They thereby voluntarily assumed an obligation which they bound themselves to the creditor to discharge, as a substitute for the remedy which, in consequence thereof, was taken away from him.
The engagement was absolute and unqualified, and has not been performed. The question is then presented, whether the non-performance is excused. It is conceded that at the time of the execution of the bond, there was a County Judge residing in the county in which the defendant resided, and that his residence therein continued till after the expiration of the time within which the application referred to in the condition was to be made, and that such initiatory proceedings had been taken and notice given as was requisite for making such application; but the County Judge, on the day designated for that purpose as stated in the finding of the referee, "was not in the county but was absent, and in fact in a state of physical and mental incapacity, so as to be unfit to discharge the duties of his office."
The application consequently could not be made to him at that time, and the result was, that it was never made. Do these facts constitute a legal excuse? They certainly do not bring the case within the exceptions above stated. The non-performance was not caused by the act of God, nor of the law, nor of the obligee. It was attributable solely to the default of *Page 152 
the judge, resulting from acts within his own control. His absence was voluntary, and his inability or unfitness to discharge the duties of his office, was in consequence of the free indulgence of a depraved appetite. All was the result of his own agency, and although the defendants themselves had done nothing to contribute to that result, and may not have been able in fact to prevent it, they nevertheless, by obligating themselves absolutely that the application should be made, became bound, not only that the petition and notices necessary to that end should be served, but also that the requisite means to make those steps effectual should be secured through the officer of the law appointed for that purpose. As a part of those means they undertook to secure the attendance of the judge, and so far to rule and govern him as that he should not by his own acts and conduct disqualify himself from the discharge of his official duty. Their obligation was in this respect the same in principle as that assumed by a party for the faithful discharge of an official or other duty by a third party, and the performance thereof was no more impossible. It is said by BRIAN, Ch. J., that "there is a diversity where a condition becomes impossible by the act of God, as death, and where by a third person (or stranger), and where by the obligor, and where by the obligees; the first and last are sufficient excuses of forfeiture, but the second is not, for in such case the obligor has undertaken that he can rule and govern the stranger, and in the third case it is his own act." (Viner's Abt., tit. Conditions (G.), pl. 19, citing Br. Conditions, pl. 127.)
It was competent, as has already been stated, for Herrick in the proceeding against him in order to avoid his commitment to have given security to the satisfaction of the officer, before whom it was pending, that the debt or demand of the creditor, with his costs, should be paid within sixty days, with interest. Suppose the defendants, instead of giving the bond they did, had covenanted that such debt, or demand with the costs, should be paid by Herrick within the time specified, and that at the expiration thereof he had been unable to make such payment, would such inability operate as an excuse for the non-performance *Page 153 
of the covenant? That would not be pretended; yet the compliance in the last case may have been more difficult and more impracticable than in the case under consideration. The County Judge might have been brought back to the county, and assuming that he was unfit to discharge the general duties of his office, it may not be unreasonable to presume, from the cause of such unfitness, that he might nevertheless have been able to adjourn the proceedings; indeed, his absence from the county, and his disability too, might possibly have been prevented by proper precautionary measures or otherwise. At all events, there is nothing to show that it was absolutely or physically impossible to have secured his attendance and action.
It has already been remarked that the bond in question was executed to relieve Herrick from commitment to prison, and that the creditor was thereby deprived of a valuable remedy then available to him, and which he did not previously possess; and I will here add, that the same law which authorized the execution of such bond for the attainment of the object, also provided that whenever it became forfeited by the non-performance of the condition thereof, the plaintiff should be entitled to recover thereon the amount due to him on the judgment in the original suit, instituted against the defendant giving such bond. (§ 18.)
Its effect was therefore, as stated by the referee, an agreement to pay the debt, with a provision that payment might be avoided or rather that the bond should be deemed satisfied, if the judgment debtor did certain things. He failed to do them. There was no contingency provided for, and although it is true that the obligors could not qualify their obligation, for the reason that it was prescribed by the law, yet they did the same thing in substance as if they had entered into any other absolute engagement without any qualification, because the execution of it in the form so prescribed was an act entirely voluntary on their part, and not in discharge of any legal duty or obligation imposed or charged on them. There is, therefore, no reason why the obligors should not be held liable to the same extent as if the bond had been made on terms and conditions *Page 154 
dictated by themselves, independent of any legal proceedings; and, under the rule of liability to which I have referred their bond must be deemed forfeited, and they have become chargeable with the legal consequences of such forfeiture.
In the case of Harmony v. Bingham (supra), it was held by this court that a party who failed to perform a contract for the transportation of merchandise from New York, and the delivery thereof at Independence, in Missouri, within twenty-six days, in consequence of a detention occasioned by an unusual freshet, which rendered a public canal, upon which the goods were intended to be transported a part of the distance, impassable, was nevertheless liable. The extent of the rule is there discussed, and the case of Beebee v. Johnson (supra) was cited with approbation. In that it was decided that the defendant, who had covenanted that he would perfect in England a patent right granted in this country, so as to ensure to the plaintiff the exclusive right of vending the article patented in the provinces of Upper and Lower Canada, was not excused from performance, although it appeared that the power of granting exclusive privileges of this kind appertained not to the mother country, but to the provinces, and that they were never granted, except to the subjects of Great Britain and residents of the provinces, and could not be granted to either the plaintiff or the defendant, as both were citizens of this country. Chief Justice NELSON, in giving the opinion of the court, says: "If the covenant be within the range of possibility, however absurd or improbable the idea of the execution of it may be, it will be upheld; as where one covenants, it shall rain to-morrow, or that the Pope shall be at Westminister on a certain day; to bring the case within the rule of dispensation it must appear that the thing to be done cannot by any means be accomplished; for if it is only improbable or out of the power of the obligor, it is not in law deemed impossible." He then said: "The fulfillment in this case cannot be considered an impossibility within the above exposition of the rule, because, for anything we know to the contrary, the exclusive right to make, use and vend the machine in the Canadas, might have been *Page 155 
secured in England by act of Parliament or otherwise; at least there is nothing in all this necessarily impossible."
There is no difference in principle between those cases and the one under consideration.
I have so far considered the case upon the assumption that the application before the County Judge was necessarily terminated by his failure to attend at the time and place designated for hearing it, and that the proceedings could not be continued before another officer; but such is not the fact. It is expressly provided, by section 51, of 2 Revised Statutes, page 284, under the title "general provisions concerning courts of record, and the powers and duties of certain judicial officers," that, "in case of the death, sickness, resignation, removal from office,absence from the county of his residence or other disability of any officer before whom any special proceedings authorized by any statute may have been commenced, and where no express provision is made by law for the continuance of such proceedings, the same may be continued by the successor in office of such officer, or by any other officer residing in the same county, who might have originally instituted such proceedings; or if there be no such officer in the same county, then by the nearest public officer in any other county who might have originally had jurisdiction of the subject matter of such proceedings, if such matter had occurred or existed in his own county." It is conceded that there was no other officer, residing in the same county in which the County Judge before whom these proceedings were instituted resided, who was competent to act; and there can consequently be no doubt (as there was sufficient time for that purpose left) that they might have been continued before the nearest County Judge or any other officer authorized to act in such case in any other county, unless an express provision was otherwise made by law for the continuance thereof.
It is insisted, on behalf of the appellants, that the act of 1831, above referred to, makes such provision by section 19. That section declares that the general provisions applicable to the proceedings under the several articles of the first title, of chapter *Page 156 
five, of the second part of the Revised Statutes, and which are contained in the seventh article of the said title, shall be deemed to apply to proceedings in said act directed, so far as the same are not inconsistent with the provisions of the said act itself, and it is said that a mode is provided by those provisions, to use the language of appellant's counsel, for "a continuance of the proceedings by the successor in office, or by any other officer in the same county who might have originally instituted such proceedings (§ 5), and if there be no competent officer in the same county, then any judge of the County Courts may attend and adjourn the proceedings to the next Court of Common Pleas, to be held in the same county, and the said court shall proceed therein." (§ 6.)
Assuming that those sections were, by the effect of said section 19, originally applicable to a case like this, they cannot apply now, for the reason, that by a change in the organization of the County Courts since the passage of those provisions and that act, there is, as is well said by the counsel, "but one judge of the County Courts in each county." There was consequently no competent officer or judge within the meaning of sections 5 and 6, by whom the proceedings could have been continued or adjourned, and as it is not claimed that any other special provision applicable to the case exists, it follows that the general statute above cited applies, and that the proceedings might have been continued under that. But a more decisive and effective reason, for holding that this statute does so apply, is that the sections 5 and 6 referred to do not contain such general provisions as are contemplated by said section 19. They relate only to specific proceedings commenced under the first, second, third, fourth and fifth articles of that title, and have no application to the sixth article nor to any other proceedings. The referee therefore correctly decided that the omission of Herrick to proceed under that statute was without legal excuse, and that there was a want of due diligence on his part.
The appellants' counsel has raised and discussed another point which remains to be noticed. It is that "the death of *Page 157 
Cobb, the sole prosecuting creditor, after the service on him of Herrick's petition and notice, and before the time of prosecuting it had arrived, abated not only the proceeding commenced by the service of Herrick's petition and notice, but also the proceeding which Cobb commenced against him by warrant, which was not then finally determined." That question has been so ably and well discussed by the referee, that it is deemed unnecessary to consider it at length. It is sufficient to say that the proceedings as commenced by warrant, were terminated by the adjudication made thereon by the judge, and the subsequent execution of the bond given by the defendants. From that time Herrick became the actor. The law gave him the right to make application for the relief contemplated by the petition and notice, and prescribed the mode in which it should be made. His action was entirely independent of and beyond the control of Cobb, until the appearance of the parties before the judge. His death certainly did not prevent the application; and that application, as has been shown by the referee, was not such a proceeding as could be abated by, or in consequence of, such death. It was in the nature of a provisional remedy after final judgment in a suit, and not a new suit. The authorities cited, to show that at common law, the death of a sole plaintiff before
final judgment abated the suit, are inapplicable to such a proceeding.
The judgment must therefore be affirmed, with costs.
JAMES, J., concurred; COMSTOCK, Ch. J., DENIO and HOYT, Js., not agreeing that the bond was forfeited had there been a failure in the legal arrangements or officers necessary to enable the debtor to prosecute his application, were for affirmance on the ground secondly discussed by LOTT, J.; SELDEN and DAVIES, Js., dissented, and MASON, J., expressed no opinion.
Judgment affirmed. *Page 158