NOAH WHEATON, Respondent, *v.* JAMES FAY et al., Appellants.

Where an application under the non-imprisonment act (chap. 300, Laws of 1831), for a warrant against a judgment debtor, made upon the ground that he has concealed his property with intent to defraud his creditors, is based upon an affidavit setting forth declarations of the debtor admitting that he has had large amounts of property, but denying that he has any remaining in his possession, and stating how and in what manner he has disposed of it and its avails; the judge entertaining the application, in case he believes the explanatory statements as to the disposition of the property to be mere pretexts and subterfuges, has the right to reject them as untrue; and the affidavit is sufficient to give jurisdiction to issue a warrant.  (FOLGER, J., dissenting.)

For the purpose of obtaining the discharge from custody of the debtor arrested in such proceedings, a bond was presented prepared by counsel of the obligors who had previously examined the statute and conversed with one of the obligors as to the provisions thereof under which the debtor could be released and as to the bond.  In an action upon the bond, *held*, that in the absence of proof of fraudulent intent, the sureties could not avoid the bond on the ground that they were induced to sign it by a mistake as to its contents, produced by an incorrect state-

ment of the judge as to its effect; *i. e.*, that it was simply a bond for the appearance of the debtor.

A bond given as prescribed by said statute (§ 10, sub. 4), conditioned that the debtor will apply for an assignment of his property and for a discharge, and prosecute the same until he obtain such discharge, is not void as a wager bond. The obligors, in effect, assert by giving it that it is possible for the debtor to show that his proceedings were just and fair and without intent to defraud; and for the doing of this they become bound.

(Argued May 21, 1875; decided June 8, 1875.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought upon a bond given to discharge defendant Kain from arrest in proceedings under the non-imprisonment act. The affidavit upon which such bond was issued, was as follows:

## "NEW YORK SUPERIOR COURT.

### NOAH WHEATON v. JOHN KAIN.

CITY AND COUNTY OF NEW YORK, *ss.*:

Noah Wheaton, plaintiff herein, being duly sworn, deposes and says, that, on the 21st day of November, 1870, judgment was recovered herein in favor of this deponent against said defendant for the sum of $1,064.75, damages and costs; and execution was thereunder subsequently issued to the sheriff of the city and county of New York, where said defendant then and still resides, and returned wholly unsatisfied.

That on the 21st day of December, 1870, deponent caused said defendant to be examined in proceedings supplementary to execution, when said defendant admitted having owned, within a year prior thereto, real estate to the amount of about $20,000 over and above all mortgages and other incumbrances thereupon. That said property consisted of one house and lot on First avenue, between Fifty-fourth and Fifty-fifth streets; and one house and lot in Twenty-fifth street, between First and Second avenues, in the city of New

York, which said defendant owned for a period of about five years prior to July or August, 1869.

That the action was commenced in the early part of the year 1869 to recover the amount of a note given by defendant for goods sold and delivered by the plaintiff to said defendant and one James Kelly.

The defendant Kain alleges, in his said examination, that, in August, 1869, he sold the house in First avenue to Michael Murphy for $11,000, and received from him, in consideration thereof, over and above the mortgages and incumbrances thereupon, the sum of $6,000, in cash; which sum said defendant alleged he carried about in his pocket until he had spent the whole of it; and when asked how he had spent it, swore that he had spent it in gambling, horse-racing, whisky, wine and women. On one occasion, in 1869, said defendant alleges that he lost $1,000 on horse-racing at Fashion Course, but could not state the day or month; said defendant further alleged that he also lost a large portion of this $6,000 at cards, but could not tell when or where, or the amount to within two, three, four or five thousand dollars; and said Kain further stated he had lost a large sum at faro, but could not tell how much within one, two or three thousand dollars; further, that he did not know within $3,000 how much money he had in his pocket when he commenced to play, but said he did not think he had as much as one dollar when he gave up the game; and that since he had received that $6,000 he had never got up from a card-table a winner.

The defendant further testified that he sold the house in Twenty-fifth street to James Fay for $14,000, subject to incumbrances thereon to the amount of $4,000, and that the balance, $10,000, he received from said Fay in about the month of July, in cash; this money said defendant pretends he handed over to Mrs. McQuade, a sister of said defendant, the wife of a laborer occupying two rooms in a tenement house in Twenty-fifth street, on the pretence that it was her property, nominally standing in his name. Said defendant also alleged that he was then (December, 1870), carrying on a

liquor store at the corner of Leroy and Washington streets for said James Fay, who is a blacksmith, and that Fay paid him, defendant, for his services, the sum of twenty dollars per week.

Said Kain and said Fay, on December 28, 1870, both swore that no books were kept in said liquor store; and that Fay depended upon the statements of Kain as to what moneys were received in the liquor store, and how the same were expended.

Deponent further says, that he verily and sincerely believes that said defendant, Kain, is actually the owner of said liquor store; and that if said two houses have been actually disposed of by him in good faith, the proceeds thereof are still in his hands, or under his control; and that his pretence that the $6,000 have been expended in horse-racing, cards, whisky, wine and women is false; and, also, that said defendant, Kain's, pretence that the $10,000 received by him for the Twenty-fifth street house was Mrs. McQuade's money, and by him handed to her, is also false. Deponent further says, that he charges, and verily believes the fact to be, that said defendant still is actually the owner of said two houses, or the proceeds thereof, and of said liquor store; and that he is now endeavoring to cover up and conceal the same so as thus to cheat and defraud this deponent, and unjustly prevent the same from being applied to the payment of this deponent's said judgment.

NOAH WHEATON.

Sworn to before me, this 23d day of May, 1871.

HENRY BISCHOFF, *Notary Public*."

The following is the recital and condition of the bond :

"Whereas, on the application of the said Noah Wheaton, and on satisfactory evidence adduced to the officer hereinafter named, required by the provisions of. the act entitled 'An act to abolish imprisonment for debt and to punish fraudulent debtors,' passed April 26, 1831, the Hon. JOHN H. McCUNN, Esq., one of the Justices of the Superior Court of the city

of New York, has duly issued his warrant under and by virtue of the provisions of the said act, to arrest the said John Kain; and, whereas, the said John Kain has been by virtue thereof arrested, and has been brought before the said JOHN H. McCUNN, and has controverted the facts and circumstances on which said warrant issued. Now, therefore, the condition of the above obligation is such, that if the said John Kain shall within thirty days apply for an assignment of all his property and for a discharge, as provided by an act entitled 'An act to abolish imprisonment for debt and to punish fraudulent debtors,' passed April 26, 1831, and if the said John Kain shall diligently prosecute the same until he obtain such discharge, then the above obligation to be void, otherwise to remain in full force and effect."

After the making of the bond and discharge of Kain from arrest, he made application for his discharge upon assignment of his property under the provisions of the act, which application was denied.

Upon the trial, defendants Fay and Reilly, the sureties, who alone appeared, gave evidence, under objection, tending to show that they did not read the bond before signing; that the judge stated that it was nothing but for the appearance of Kain in court when called on, and thereupon they signed without reading, supposing it was a bail bond. It appeared that the attorney for Kain, who was also counsel for defendant Fay, was present; that he examined the statute, prepared the bond, and had a talk with Fay about it. At the close of the trial, plaintiff's counsel moved to strike out the language used by the judge or any other person as to the effect of the bond. The motion was granted, and defendants' counsel excepted. Further facts appear in the opinion.

*H. P. Townsend* for the appellants. There should have been evidence of the untruth of Kain's statement, and the belief or disbelief of plaintiff in respect thereto was of no account. (*Broadhead* v. *McConnell*, 3 Barb., 175; *Adkins* v. *Brower*, 3 Cow., 306; *Bowman* v. *Russ*, 9 id., 234.)

*Samuel Hand* for the respondent. The bond given by defendants was not invalid on its face. (*Cobb* v. *Harmon*, 23 N. Y., 149; *Paradine* v. *Jane*, Aleyn, 26; *Harmony* v. *Bingham*, 2 Kern., 99; *Beebe* v. *Johnson*, 19 Wend., 500; *People* v. *Bartlett*, 3 Hill, 571.) Plaintiff's application stated facts sufficient to give the court issuing the warrant jurisdiction, and its determination cannot be reviewed (*Birdsall* v. *Phillips*, 17 Wend., 464; *Mosher* v. *People*, 5 Barb., 575; *People* v. *Recorder of Albany*, 6 Hill, 429; *In re Prime*, 1 Barb., 296; *Steward* v. *Biddlecum*, 2 N. Y., 103; *Hall* v. *McKnight*, 6 N. Y. L. Obs., 348.)

FOLGER, J.* The question which stands at the threshold of the case is, whether the judge, who took the bond, had acquired jurisdiction. And this depends upon the sufficiency, to confer jurisdiction, of the affidavit upon which the warrant was issued. The allegations of it were not in any way denied, questioned or explained, though Kain, when brought before the judge, had the right to do so. He offered neither his own affidavit, nor the testimony of any other person, in contradiction of the allegations of his former possession and title of property, nor in confirmation of his previous declarations of the manner in which he claimed that he had disposed of it. *Mosher* v. *The People* (5 Barb., 575), is cited to show that where one is arrested under a warrant, and does not deny the facts and circumstances alleged in the affidavit, every intendment is to be taken against the defendant, and the neglect to deny may be taken into consideration in deciding upon the sufficiency of the averments. That case is to be distinguished from this, for here the averments themselves, of the affidavit, are the assertions of the defendant, and to reiterate them would be but reassertion; also, for that case holds that the averments of the affidavit were enough to give primary jurisdiction, and that it was upon the subse-

* The case having fallen to FOLGER, J., in which to write, the opinion of the court was drawn up by him, though he differed from the majority of it, on the point that jurisdiction had been acquired to issue the warrant.

quent consideration, on the return of the warrant, whether
to further hold the defendant, that his omission to deny
would give weight to the averments. This omission of Kain
in this case did not have the effect to strengthen the allega-
tions of the affidavit, because the question of whether they
were enough here to give jurisdiction, is to be determined as
of the time when the affidavit was presented to the judge,
and he issued his warrant thereupon. If they were not
enough to give him jurisdiction then, they are not helped in
that respect by an omission of Kain, after his arrest, to deny
them. The allegations of the affidavit are positive, except
those as to the intent of Kain, which are upon belief. But
as the judge was required to determine the intent from the
facts and circumstances stated, and not upon an allegation of
intent, it matters not whether that was on belief or upon an
assertion of knowledge. The averments of the affidavit were
quite sufficient to show that Kain did, after the commence-
ment of the action against him, in which the judgment was
got, have real estate, and that he had sold it and converted it
into money. They proved the possession in him at one time,
and after suit brought against him, of a considerable sum of
money. They proved it, however, only by the recital of his
statements on oath, at an examination in proceedings supple-
mentary to execution. The affidavit recites further state-
ments by him, on oath, in the same examination, which, if
accepted, show that the money thus once in his possession
had been disposed of by him, and was no longer in his posses-
sion. Ten thousand dollars of it, he asserted that he had deliv-
ered to his sister, for the reason that the premises, from the sale
of which it was derived, were her property, though nominally
his. This sister was the wife of a laborer, occupying two rooms
in a tenement house in New York city. Six thousand dollars
were the avails of the sale of the premises which he admitted
to have been his own. This sum he had received at one time,
and had borne about upon his person, until it had been all
spent in gambling at a faro-bank, in card playing, in betting
at the Fashion race-course, and in drinking and licentious-

ness.    In 1869 (he could not give the day or month), he bet and lost $1,000 at the Fashion course, but could not specify the amount of the sums lost at faro, or at cards.    At the time of the examination, Kain stated on oath that he was carrying on a liquor store for the defendant Fay, who was by trade a black-smith, who paid Kain a stipulated sum for his services, and that no books were kept in that store, and the dependence of Fay, was upon the statements of Kain, as to what moneys were received there, and how they were expended.    Some members of the court are of opinion that these statements of Kain are not to be accepted; that they are mere pretexts and sub-terfuges, and are to be rejected as untrue; that the judge, on reading the affidavit, though he was bound to consider all his declarations, had the same right which a jury would have as to the testimony of a witness, to accept some parts of it as true, to disbelieve other parts and to reject them as untrue; and that when these excusatory statements were rejected as untrue, the affidavit showed, that from the sales of the two pieces of real estate Kain had more or less money in his pos-session, and that his denial of the possession of it, on his examination, was a fraudulent concealment thereof, which brought him within the statute, and gave the judge jurisdic-tion.    For my part, I am of the opinion that they are not so improbable, so extravagant, or descriptive of so unusual a course of conduct or state of facts, as that in the absence of aught affirmatively against them, they can be rejected as untrue, and the admission of the former possession of prop-erty be received as alone true; that at the utmost, they are suspicious statements, which would not long withstand the force of contradictory statements, but uncontradicted they are to be received, and may not be arbitrarily disbelieved. Another member of the court is of opinion, that if the state-ment of the possession of property be taken as true, and the statement of the disposition of it be rejected as false, there is no showing of a fraudulent concealment of property, nor of other act or intent bringing Kain within the provisions of the non-imprisonment act.

The appellants claim that they executed the bond in suit by a mistake as to the contents, nature and effect of it, produced by the incorrect statements to them of the judge, and of the attorney for the plaintiffs. The referee has found to the contrary. But it is further claimed that his finding was made after the testimony upon that question, given by the defendant, had been stricken out by the referee, on the motion of the plaintiff. The language of the case does not come up to the claim of the appellants, that the whole testimony on this head was stricken out. It is there stated, that the plaintiff's counsel moved to strike out of the testimony, the language used by Judge McCUNN, or by any other person, as *to the effect* of the bond. As the bond was in writing, as it is shown or easily to be inferred, that it was prepared and read by counsel, who is alleged in the answer to have been at the time of the execution of it, the attorney of the defendant, and who is plainly shown by the testimony to have been the counsel in attendance in the matter for one of them; as that counsel had examined the statute, as he had previously conversed with the defendant Fay as to the provisions of the statute under which Kain could be released from custody, and had conversed with him as to that very bond; it is not to be maintained that the appellants can avoid it, because they were told, without fraudulent purpose or intent to deceive, that its effect is other than what it is in fact. It would not be permitted to vary the terms of this instrument by parol, and to make it other than what it reads. But that is not far removed from a permission, to avoid a written instrument, because the effect of its unambiguous words, is different from what the person executing it supposed. When a party enters into a written contract, in the absence of fraud or imposition, he is conclusively presumed to understand the terms and legal effect of it, and to assent to them (*Rice* v. *Dwight Mfg. Co.*, 2 Cush., 80) ; so that if all that was stricken from the testimony, was the recital of what language was used as to the effect of this instrument, there was no error.

It is true that if there is a misdescription of the subject

matter of a contract, not by fraud, but by mistake, ignorance or carelessness, and that is in a material and substantial point which so affects the contract, as that it may be reasonably supposed that but for that misdescription it would not have been made, there is afforded a good ground for avoiding a contract. Thus in *Flight* v. *Booth* (1 Bing. N. C., 376), there was a sale at auction of leasehold premises, and the lease was not exhibited to the bidders, but the particulars of sale, misdescribed in a material matter a restrictive condition in it. The successful bidder, who had signed the terms of sale and paid the deposit money, refused to perform on seeing the lease, and was sustained by the court and had judgment for the amount of his deposit. But this is misdescription of the subject-matter of the contract; something out of the writing of which it treats and which it misdescribes. *Smith* v. *Hughes* (L. R. [6 Q. B.], 597), in one of its phases, furnishes an instance of mistake by the purchaser as to the subject-matter, but no misdescription in the contract. But if the writing which is signed is not mistaken in its terms, a previous oral declaration made as to the subject-matter differing from the writing, will not control nor affect it. (*Gunnis* v. *Erhart*, 1 Hy. Blk., 289 ; *Powell* v. *Edmunds*, 12 East, 6.) It would not have been error to have rejected testimony offered, of statements as to the effect of the bond ; and it was not error to strike it out after it had been received.

It appears, then, that the case went to the referee for his consideration, upon all the testimony given, except that of statements as to the effect of the bond, and that upon that testimony he found that the defendants executed the bond. We not only feel bound by the finding of the referee, but we consider that it was a proper finding from all of the testimony. The attorney for the plaintiff, who was a witness on the trial, and who was present before the judge who took the bond at the time of taking it, testified that though the judge made use of an expression like that attributed to him by the defendants as to the effect of the bond, he, the witness, at once corrected it and made known the purpose and

effect of it to the counsel for Fay in the presence of the defendants, and that they admitted to him thereafter that they knew its contents. Moreover, the defendants were attended by counsel who had prepared and read the bond; who had perused the statute to learn its provisions and the mode of obtaining the discharge of Kain from custody, and who was present to watch and care for the defendants. It is impossible to conclude that he was ignorant of the true nature of the instrument, or of the obligation his clients were taking upon themselves, or that they executed it without his advice and approval; unless we assume that he knowingly and wickedly permitted them to do that, which he knew that they did not intend to do. Before that conclusion is adopted, it is better to take that view of the discordant testimony which will reconcile his conduct with personal and professional honor and integrity. He testified that he said to the judge that they were there to give a bond as provided in the act. As no motion was made for an adjournment of the hearing, he could not have supposed that he had prepared and produced a bond for Kain's appearance on the adjourned day; and when he spoke thus, he must have meant that provision of the act to which the bond applies. We have no doubt but that the defendants meant to sign the instrument which they have signed, to produce the effect which the execution of it did produce; nor but that they executed it without a mistake as to its nature and subject-matter.

The position of the appellants, that this bond is void as being a wager bond, is not tenable. It is in the form and for the purpose required and approved by statute. (Laws of 1831, chap. 300, § 10, sub. 4.) It is based upon the supposition, that the person arrested on the warrant may be able to show that his proceedings are just and fair (id., § 16), and that he has had no intent to defraud his creditors. But he and his sureties take the risk of that. They save him from immediate imprisonment by taking that risk. They assert, in effect, by giving it, that it is possible to show that; and it is

an act of his, which they assume that he shall do. When he fails to do that, he has failed to do an act for the doing of which they became bound. If it be impossible, it is an impossibility which the statute contemplates as not without the pale of events, and it provides for it. In short, the statute makes lawful just the bond which they entered into; and they having made a bond lawful in form and lawful in the condition annexed, cannot now be heard to say that it was for the performance of an impossibility. If the proceedings on the part of Kain had been just and fair, and he had disposed of his property without intent to defraud his creditors, it was not only possible for him to obtain a discharge but it was his right; and we are to presume that what was right and lawful would have been adjudged to him. That he did not obtain it, we are bound to hold, was because the contrary was the fact. They were his own acts, then, which prevented his discharge, and rendered it impossible. An impossibility thus originating is not a defence. (*Cobb* v. *Harmon*, 23 N. Y., 148, and cases there cited.)

As none of the errors alleged by the appellants are found in the case, the judgment should be affirmed.

All concur; except Folger, J. (who dissents from that portion holding that the affidavits gave the judge jurisdiction); and Church, Ch. J., not voting.

Judgment affirmed.