SANGER and others vs. DUN and others.

CONTRACT. *Liability of " Collection Agency " for money collected through it.*

Defendants having a " mercantile agency " with a " collection department," in this state, plaintiffs left with them a claim, for collection, and took from them a receipt stating the amount of such claim and that it was to be transmitted by mail for collection or adjustment, to an attorney, at the risk and on account of the plaintiffs, and the proceeds to be paid over or accounted for to them when received by defendants from said attorney. Plaintiffs also signed a receipt in defendant's books, which stated the nature and amount of their said claim, and that the receipt first above mentioned had been given them, reciting its terms. *Held,*

1. That, in the absence of any proof of fraud in respect to them, these receipts fix the rights and liabilities of the parties in regard to said claim, even if accepted or subscribed by plaintiffs without reading them.

2. That, under such receipts, defendants were not liable for the acts or default of the attorney employed by them to collect the claim, unless they were guilty of gross negligence in the selection of such attorney.

LYON and TAYLOR. JJ., dissent as to the second point.

3. What the liability of defendants would have been in the absence of any express contract, not considered.

APPEAL from the County Court of *Milwaukee* County.

On the 5th of September, 1874, plaintiffs, at the city of Milwaukee, put into defendants' hands, for collection, a claim, in the form of an account, against L. P. Rogers & Bros., of Foxburgh, Pa. Defendants forwarded the claim to an attorney at St. Petersburgh, a village in the same county as Foxburgh, who collected the whole amount of the claim, but never paid over any part of it to either the defendants or the plaintiffs. This action was brought to recover the amount from defendants. The complaint alleges that at the time when such claim was put in their hands, defendants' business was " the collection of all kinds of debts in all parts of the United States; " that, at and before said date, they urged plaintiffs to place in their hands for collection accounts against persons residing in or out of this state, representing that they had extraordinary means and facilities for the speedy collection of claims against any person in any part of the United States, and assuring plaintiffs that all claims so placed in their hands should be promptly collected, and the proceeds promptly paid over; and that plaintiffs gave defendants, for collection, the claim in question, at their request and in reliance upon said representations, etc.

The answer was, in substance, that plaintiffs, when they requested defendants to forward said claim for collection, entered into a written agreement with defendants, whereby the former agreed that the latter should transmit said claim for collection, by mail, to an attorney, for the account and at the risk of plaintiffs; that the attorney to whom it was transmitted by defendants, was a lawyer of good standing and repute in his profession, and defendants had at the time no knowledge or information contrary to his general reputation for integrity; and that the moneys collected by him had not been lost through any neglect or default of defendants.

The character of the two papers respectively accepted and signed by plaintiffs at the time when the claim in question

was left with defendants for collection, will sufficiently appear from the opinion. Plaintiffs' evidence tended to show that they had not read these receipts or become aware that they contained the clause relied upon by defendants, until after their claim had been collected by the attorney to whom it was sent. In its charge to the jury, the circuit court stated that these papers "were not merely receipts, but had provisions in them which amounted to a contract;" that if the contract between the parties was that expressed in the receipts, plaintiffs could not recover, unless it further appeared that defendants' agent to whom the account was sent, was, to defendants' knowledge, a dishonest and unfit person; but that if the jury should further find, in reference to the restrictive clause relied on by defendants, that plaintiffs, when they accepted and signed the respective receipts, did not understand that they contained such a clause, then defendants were liable for the amount collected by the attorney, whether they did or did not know of his incompetency or dishonesty.

There was a verdict for the plaintiffs; a new trial was denied; and defendants appealed from a judgment pursuant to the verdict.

For the appellants, there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. Lynde*. They contended, 1. That upon the question whether, if the account had been left by plaintiffs with defendants for collection without any special contract, defendants would have been liable for the acts of the attorney employed by them, there is a conflict of authorities; but that the weight of authority in this country is against the liability. *Stacy v. Dane Co. Bank*, 12 Wis., 633; *Fabens v. Mercantile Bank*, 23 Pick., 330; *Dorchester Bank v. N. E. Bank*, 1 Cush., 177; *Warren Bank v. Suffolk Bank*, 10 id., 582; *East Haddam Bank v. Scoville*, 12 Conn., 303; *Agricultural Bank v. Com. Bank*, 7 Sm. & M., 592; *Citizens' Bank v. Howell*, 8 Md., 530; *Hyde v. Planter's Bank*, 17 La., 560; 2 Rob. (La.), 294; *Bellemire v. Bank of*

*U. S.*, 4 Whart., 105.   2. That a party to a written contract cannot be permitted to prove that he did not read it or know its contents when he signed it.   See *Upton v. Tribilcock*, 91 U. S., 50, citing *Jackson v. Croy*, 12 Johns., 427; *Lies v. Stub*, 6 Watts, 48; *Farley v. Bryant*, 32 Me., 474; *Coffing v. Taylor*, 16 Ill., 457; *Stapylton v. Scott*, 13 Ves., 427; *Alvanly v. Kinnord*, 2 M. & G., 7; *S. C.*, 29 Beav., 490.   See also *Germania F. I. Co. v. R. R. Co.*, 72 N. Y., 90; *Hill v. Railroad Co.*, 73 id., 351; *Wheaton v. Fay*, 62 id., 283; *Grace v. Adams*, 100 Mass., 505; *Winslow v. Driskell*, 9 Gray, 363; *McCormack v. Molburg*, 43 Iowa, 562; *Bell v. Byerson*, 11 id., 233; *Rogers v. Place*, 29 Ind., 577; *Nebeker v. Cutsinger*, 48 id., 436; *Bank of Washington v. Triplet*, 1 Pet., 30; Kerr on F. & M., 77.   To escape liability upon the contract, mistake or fraud in its *execution* must be both *alleged* and shown.   *Armstrong v. Grand Trunk R'y Co.*, 18 Am. Law Reg., N. S., 439; *L. & N. Railroad Co. v. Brownlee*, 9 Cent. L. J., 101; *Kirkland v. Dinsmore*, 62 N. Y., 179; *Hill v. Railway Co.* and *Germania F. I. Co. v. Railway Co.*, *supra*.   3. That the contract for a limited service and a limited liability was valid.   *Stacy v. Dane Co. Bank*, *supra; Bradstreet v. Everson*, 72 Pa. St., 134–5.

For the respondents, there was a brief by *Markhams & Smith*, and oral argument by *E. P. Smith*.   They contended, 1. That where persons holding themselves out as a collecting agency receive accounts for collection by their agents, they must be regarded as undertaking to transmit for collection to a faithful and responsible agent.   *Bradstreet v. Everson*, 72 Pa. St., 124; *Riddle v. Poorman*, 3 Penn., 224; *Cox v. Livingston*, 2 W. & S., 103; *Krause v. Dorrance*, 10 Barr, 462; *Wingate v. Mechanics' Bank*, id., 104; *Rhines v. Evans*, 16 P. F. Smith, 192; *Lewis v. Peck*, 10 Ala., 142; *Pollard v. Rowland*, 2 Blackf., 22; *Cummins v. McLain*, 2 Ark., 402; *Wilkinson v. Griswold*, 12 Sm. & M., 669; *Montg. Co. Bank v. Albany Bank*, 8 Barb., 396.   Cases like *Fabens v. The*

*Mercantile Bank*, 23 Pick., 330, and other bank cases cited for the appellants, are greatly controlled by " the general custom of merchants and bankers, and the implied obligations ·upon the latter resulting from their relations," as is stated by SHAW, C. J., in the Fabens case. But some authorities hold that even a bank sending paper to another bank for collection, is liable for the malfeasance or negligence of the latter as its agent. *Bank of Wash. v. Triplet*, 1 Pet., 25; *Allen v. Merchants' Bank*, 22 Wend., 215; *Bellemire v. Bank of U. S.*, 4 Whart., 105, 513; *Van Wart v. Woolley*, 3 Barn. & Cress., 439. 2. That the receipts relied upon by defendants would not bear the construction contended for by them; but that if thus construed they would permit the defendants to take advantage of their own wrong, and would be void as contrary to public policy. *Candee v. W. U. Tel. Co.*, 34 Wis., 471–5; *True v. Int. Tel. Co.*, 60 Me., 9; *Tyler v. W. U. Tel. Co.*, 8 Alb. L. J., 181; *Birney v. N. Y. & W. Tel. Co.*, 18 Md., 341; *Ellis v. Am. Tel. Co.*, 13 Allen, 226; *Sweatland v. Ill. & M. Tel. Co.*, 27 Iowa, 433; *U. S. Tel. Co. v. Wenger*, 55 Pa. St., 262; *Redpath v. W. U. Tel. Co.*, 112 Mass., 71; *Clarke v. Holmes*, 7 H. & N., 938; Scott & J. on Tel., §§ 201–2. Such a contract, so construed, would also be in violation of the doctrine that a principal is estopped from denying his liability through an agent, especially when the agent has been guilty of fraud. *York v. Railroad*, 3 Wall., 107; *Transp. Co. v. Downer*, 11 id., 129; *Erie & W. Transp. Co. v. Dater* (S. C. Ill.), 8 Cent. L. J., 293.

COLE, J. We are all clear in the opinion that this case must be decided upon the receipts offered in evidence, which constitute the contract, and fix the rights and liabilities of the parties. These receipts are plain and distinct in their language, and no good reason was suggested on the argument why they are not valid and binding upon the parties executing them. True, it was said by the learned counsel for the plaintiffs, that

the proof shows that *Mr. Rockwell* did not read the receipts, or know or understand that they contained a clause restricting the liability of the defendants. To this remark we answer in the words used by this and other courts when considering a similar question. It is not claimed that he was overreached or deceived otherwise than in the fact that he did not read or understand the contract which he signed; but that was his own negligence. It will not do for a man to enter into a contract, and, when called upon to abide by its conditions, say that he did not read it when he signed it, or did not know what it contained. *Fuller v. Madison Mutual Insurance Co.*, 36 Wis., 599; *Upton v. Tribilcock*, 91 U. S., 45; *Wheaton v. Fay*, 62 N. Y., 275; *Germania Fire Insurance Co. v. M. & C. Railroad*, 72 N. Y., 90; *Hill v. S., B. & N. Y. Railroad*, 73 N. Y., 351.

Of course we are considering a case relieved from all pretense of fraud or imposition, for nothing of the kind was used in procuring the contract. The only reason for claiming that the plaintiffs are not bound by the restrictive clause in the receipts is, that *Rockwell* did not read them or understand that they contained such a restrictive clause when the papers were executed. But if he failed to read or understand the contract, it was his own fault, and the plaintiffs alone are responsible for the omission. Therefore, under the circumstances, we all think that the contract is binding upon the parties, and it must be conclusively presumed that they understood its terms and assented to them. This being so, the question is, What was the extent or degree of responsibility assumed by the defendants in the transaction? A majority of the court are of the opinion that the defendants were only liable, under the contract, for gross negligence in the selection of the attorney to whom the plaintiffs' account was sent for collection.

On the delivery of the account to the defendants, they gave the plaintiffs a receipt to the effect that the account was to be transmitted by mail, for collection or adjustment, to an attor-

ney, at the risk and on the account of the plaintiffs — the proceeds to be paid over or accounted for to the plaintiffs when received by the defendants from the attorney. At the same time a receipt was signed by the plaintiffs in the books of the defendants, stating the amount of the account, and that the claim was to be transmitted by mail to an attorney, at the risk and for the account of the plaintiffs. Such are the conditions of the receipts which constitute the contract between the parties; and the question therefore is, What liability did the defendants assume in the matter? On the part of the plaintiffs it is insisted, that, as the defendants held themselves out to the world as a collecting agency, when they received the account of the plaintiffs, they undertook either to collect it themselves, or remit the same to some suitable attorney in that part of the country where the debtors lived, to make the collection, and that they became responsible for the negligence or misconduct of the attorney whom they employed for that purpose.

It well may be that such would be the responsibility of the defendants, were it not for the restrictive clause in the receipts. But that clause, if any effect is given to it, clearly limits that liability; for it provides that the account is to be transmitted to an attorney for collection at the risk of the plaintiffs. Such being the case, we think the defendants are not liable for the acts or default of the attorney employed by them, unless in the selection of such attorney they were guilty of gross negligence; for it seems to us it was competent for the parties, by express contract, to limit the liability which the law would otherwise impose upon the defendants for the acts of the attorney employed by them to make the collection. We are not aware of any principle of law or public policy which condemns such a contract. In respect to the employment of sub-agents or substitutes, when provided for in the letter of attorney, Mr. Justice STORY lays down the general rule to be: "In such cases it is clear that the original attorney or agent will not be liable for the acts or omissions of the substitute appointed or em-

ployed by him, unless, in the appointment or substitution, he is guilty of fraud or gross negligence, or improperly coöperates in the acts or omissions." Story on Agency, § 201. Notwithstanding the clause in the receipts, it is sought to render the defendants responsible for the loss of the money collected by the attorney; in other words, virtually to make the defendants guarantors of the fidelity and integrity of such attorney, although there is not a particle of proof which tends to show that they were guilty of gross negligence in selecting him. We have not been referred to any case which carries the liability of an attorney or collecting agency to such an extent, under a contract like the one before us.

The case of *Bradstreet v. Everson,* 72 Pa. St., 124, was much commented on by counsel on both sides as sustaining their respective positions; but, as we understand that case, it does not sustain the views of plaintiffs' counsel. The court there decides, in effect, that a collecting agency which invites customers on the ground that it has facilities for making distant collections, and selects its agents to do its business, is liable for collections made by its agents, when it undertakes the collection by the express terms of its receipt. But the court expressly say, if the agency does not intend to assume such a liability, it has it in its power to limit its responsibility by its receipt; and, as the receipt in that case contained no such restriction, the defendants were held liable for the collection made by one of its attorneys, to whom it had sent a claim belonging to the plaintiff.

The majority rest the decision expressly upon the restrictive clause in the receipt. Perhaps a greater liability might arise in the absence of such clause; but this is a point we need not consider, as we all agree that the restriction is legal and effectual. The majority think that the defendants are only responsible for gross negligence in selecting the attorney to whom the claim was sent for collection. That view is so in conflict with portions of the charge of the court below, which were

excepted to, in regard to the rule of diligence imposed by the contract upon the defendants, that it must work a reversal of the judgment.

Therefore, without considering any other point, the judgment of the court must be reversed, and a new trial ordered.

*By the Court.* — So ordered.

Lyon and Taylor, JJ., dissented.